[Cite as *In re Edgell*, 2015-Ohio-4427.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| KEVIN EDGELL, | : | |
| Petitioner-Appellant, | : | **CASE NO. 2014-L-126** |
| and | : | |
| DAWN EDGELL, | : | |
| Petitioner-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 06 DI 000404.

Judgment: Affirmed.

*Paul R. Malchesky,* Cannon, Aveni, & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (For Appellant).

*Mary Joseph Clair,* 4132 Erie Street, #202, Willoughby, OH 44094 (For Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Kevin Edgell, appeals the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, adopting the magistrate's decision granting appellee, Dawn Edgell's, motion to show cause due to Kevin's failure to pay child support for the parties' daughter. This is the second appeal appellant has filed concerning the award of child support. For the reasons that follow, the trial court's judgment is affirmed.

{¶2} The parties were first married in 1979. Two children were born as issue of that marriage, Bradley and Brandon. The parties were divorced in 1983. In 1984, Dawn gave birth to a daughter, Jaime. Kevin is not her natural father. Thereafter, on August 11, 1985, the parties remarried. When Jaime was about three years old, she was diagnosed as being mentally retarded. When she was ten years old, Kevin adopted her in proceedings filed in the Lake County Court of Common Pleas, Probate Division.

{¶3} Soon after Jaime turned 18, in 2002, the parties filed an application for guardianship of Jaime in the Probate Division, alleging that Jaime was incompetent. Both parents were appointed Jaime's co-guardians.

{¶4} On June 1, 2006, the parties signed a separation agreement, and later that day they filed a petition for dissolution of their marriage. As of that date, Bradley was 25 years old, Brandon was 24, and Jaime was 21. The separation agreement did not disclose Jaime's disability. During the dissolution hearing, both parties testified that each of their children was over 18 years of age, but they did not disclose that Jaime was disabled. The trial court entered its dissolution decree adopting the parties' separation agreement on August 24, 2006.

{¶5} After Kevin dropped Jaime from his company's health insurance plan and put her on Medicaid and then refused to reimburse Dawn for uncovered expenses, on March 27, 2008, Dawn filed a motion to vacate the dissolution decree, arguing that Jaime was disabled and in need of child support.

{¶6} On April 27, 2009, the court entered judgment granting Dawn's motion to vacate with respect to the issue of child support. The court found the dissolution decree and balance of the separation agreement were to remain in effect. Dawn's recently-filed motion to establish child support was deferred for hearing. Kevin appealed the trial

2

court's judgment. In *In re Edgell*, 11th Dist. Lake No. 2009-L-065, 2010-Ohio-6435, this court affirmed the trial court's judgment vacating the dissolution decree as to child support. *Id.* at ¶72. Kevin appealed this court's decision, but the Supreme Court of Ohio did not allow his appeal at 128 Ohio St.3d 1483, 2011-Ohio-2055.

{¶7} On May 11, 2011, a judgment was entered naming Dawn Jaime's residential parent and legal custodian.

{¶8} The trial court's magistrate held hearings on Dawn's motion to establish child support, following which, on July 29, 2011, the magistrate filed her decision granting Dawn's motion and ordering Kevin to pay Dawn child support for Jaime, as follows:

{¶9} Effective March 9, 2009 through December 31, 2009, $843.03 per month;

{¶10} Effective January 1, 2010, through December 31, 2010, $874.65 per month; and

{¶11} Effective January 1, 2011 and continuing thereafter, $693.38 per month.

{¶12} The magistrate thus established the retroactive amount of child support, which created an automatic support arrearage in the amount of $24,546 as of August 31, 2011. In addition to the ongoing monthly child support obligation, Kevin was ordered to pay $138.67 toward his retroactive arrearage beginning on September 1, 2011.

{¶13} Kevin did not file objections to the magistrate's decision. Instead, just two days after the magistrate filed her decision, on August 1, 2011, he filed a Chapter 11 bankruptcy case. On August 16, 2011, the trial court entered judgment adopting the magistrate's decision regarding child support. Kevin did not appeal that judgment.

3

{¶14} On September 23, 2013, Dawn, acting pro se, filed a motion to show cause as to why Kevin should not be held in contempt for not paying child support pursuant to the court's August 16, 2011 child support order. On December 20, 2013, Kevin filed a motion to modify child support, arguing he had insufficient income to pay child support as ordered. Subsequently, Dawn retained counsel and, on March 20, 2014, filed a second motion to show cause.

{¶15} On the day of trial, Dawn dismissed her first motion to show cause and the trial proceeded on her second motion on May 12, 2014 before the magistrate.

{¶16} Debra Hobbins, support officer with the Lake County Child Support Enforcement Agency, testified that from September 1, 2011 to February 28, 2014, the amount Kevin should have paid Dawn for Jaime, pursuant to the ongoing child support order, was $20,801. However, Kevin only sent the agency $7,853 toward the ongoing order. Thus, under the ongoing order, the amount due as of February 28, 2014, was $12,947.

{¶17} Ms. Hobbins said that, according to the child support order, Kevin should have also paid $3,050 toward the $24,546 retroactive arrears as of February 28, 2014. However, he only paid $117.

{¶18} With respect to his ongoing child support of $962/month, which included child support, the cash medical obligation, and the arrears for both, in 2014, Kevin only paid $300 in January, $700 in March, and $400 in April.

{¶19} Dawn testified she lives with Jaime in Painesville. Jaime is now 29 years old, but, due to her mental disability, she is mentally six or seven years old and functions at the level of a first or second grader. Dawn said that Kevin lives with his current wife Noel on a horse farm in Chesterland, which encompasses six to eight acres

4

and includes a residence, barn, arena, and several horses. She said that Jaime used to visit Kevin in Chesterland, but he stopped visiting with Jaime eight months ago. Dawn testified that from September 1, 2011 through February 28, 2014, the only funds she has received for child support are the payments Kevin made through CSEA. She has not received any additional payments directly from him. Dawn said that, due to Kevin's failure to comply with the court's child support order, she was forced to file her motion to show cause.

{¶20} Kevin called his accountant, Thomas Judge, to testify on his behalf. Mr. Judge is a CPA and prepares Kevin's personal and business tax returns. He said that in 2011, the gross receipts for the first quarter for Kevin's business, Edgell Plumbing, Inc. were $303,460, but the net income for that period was only $5,935. On or about April 1, 2011, the corporation was dissolved, and Edgell Plumbing began doing business as a sole proprietorship with Kevin as the owner.

{¶21} Kevin's personal tax return for 2011 shows he had gross receipts for the business of $696,902, but reported a net business loss of $8,222. The I.R.S. audited Kevin, and determined he owed $30,000 in federal taxes for 2011. This is a debt that Kevin owes personally and is listed in Kevin's bankruptcy plan of reorganization as a priority claim to be paid in five years.

{¶22} In 2011, Kevin's wife Noel received a salary from Edgell Plumbing of $31,200. She also earned $45,670 from her employment with the city of Painesville. In addition, she grossed $78,480 from her horse-boarding business, which she conducts at the Chesterland property. Thus, her gross income for 2011 was $155,350.

{¶23} Mr. Judge said that in 2012, Edgell Plumbing's gross receipts were listed in Kevin's tax return at $1,473,350. Kevin reported a net profit of $144,751 from Edgell

Plumbing. Kevin paid the I.R.S. $26,646 in federal taxes in 2012. From 2011 to 2012, Edgell Plumbing's gross receipts increased by $476,000.

{¶24} In 2012, in addition to Noel's salary with the city in the amount of $38,894, she earned $31,200 from Edgell Plumbing. She thus reported W-2 income of $70,094. She also earned $74,953 from her horse-boarding business, for a total income of $145,047.

{¶25} Mr. Judge said that he had not yet prepared Kevin's 2013 personal tax return. He said he had all the records he needed regarding Kevin's business to prepare that return, but was waiting for information regarding Noel's horse-boarding business and the rents received by Kevin from his rental property. Mr. Judge said that he has documentation for Kevin's income in 2013, but this information was at his office. However, neither he nor Kevin presented such documentation to the magistrate.

{¶26} Mr. Judge said that since Edgell Plumbing has been operated as a sole proprietorship beginning in April 2011, Kevin takes his earnings in weekly draws. Kevin also has rental income from a residence he owns in Painesville Township. Kevin receives the rental payments and reports to Mr. Judge the amount he receives for tax reporting purposes.

{¶27} Glenn Forbes testified he is an attorney and was retained by Kevin to prepare his bankruptcy plan of reorganization, which was confirmed by the bankruptcy court on May 11, 2012. The secured debt under Kevin's plan was on two parcels of property, including Kevin's residence in Chesterland and a rental property Kevin owns. Kevin is current on both of these mortgages. The plan lists Kevin's retroactive child support arrearage in the amount of $27,261 as a priority claim to be paid off in five years.

6

{¶28} Mr. Forbes said that Kevin's plan of reorganization calls for a distribution account to be set up and for money in that account to be used for distributions. He said that Kevin, as the reorganized debtor, has sole control over all of his disbursements. Thus, Kevin decides who will be paid and the amount he will pay. Mr. Forbes said the only distributions that Kevin has made were for administrative expenses and a payment of $7,500, which was the balance owed on a mortgage held by FirstMerit Bank on the building Kevin formerly used to operate the business before his bankruptcy. Kevin has not paid anything on his retroactive child support arrearage.

{¶29} Kevin testified he lives in Chesterland with his current wife Noel in a home, which he bought for them in 2006, the same year his marriage to Dawn was dissolved, for $635,000. The house is titled in his name. He said he owes over $400,000 on the house, but provided no specifics. He said he takes a weekly draw from his business of $1,050, but his take home pay is only $650 because $400 goes to Dawn on a property settlement payment plan from their dissolution. This leaves him with $2,600/month. He said the rent he receives from his rental property is less than his monthly mortgage payment on the property. Yet, he said he pays the monthly mortgage on his home of $3,750. He also pays the monthly gas bill, which is about $400, and the monthly electricity bill, which is also about $400. He also pays $1,600/month for food. These monthly expenses total about $6,150. He said that Noel pays some utilities. He said that in 2012, he paid $26,646 to the I.R.S., but has paid nothing toward his retroactive child support arrears because, he says, he cannot afford it. He said he also does not pay his current child support because he cannot afford to. He said that because this is his business, he decides who will be paid and what he will pay. He said he pays his

business and personal expenses, such as his taxes, from his business in addition to his weekly draws.

{¶30} Kevin admitted he owns a race car, which is a classic 1970 Camaro, valued at $15,000. He also owns a 2002 mobile home, which, he claims, is worth $5,500. He has a 401K with a present value of $5,000 to $6,000. He said his home and horse farm are owned solely by him. He said his wife runs the horse-boarding business on the 8-acre property and she has about 40 horses, some of which she owns and some of which are boarded in their barn. He said that Jaime's horse is still on the property, although he has not had her for a visit at his home since Christmas.

{¶31} Kevin admitted his business earned $1.4 million in 2012 from plumbing jobs he performed, and his company's net profit for that year was $144,000. From his business, he paid his business and personal expenses, such as his supplies, payroll, health insurance for his employees, other business expenses, his salary, and the $26,646 he owed in federal taxes to the I.R.S.

{¶32} Kevin said he has no idea what his gross or net profit was for 2013. He had not yet filed his 2013 income tax return as of the trial date (May 20, 2014) and did not present any documentation for his income, although Mr. Judge said this information was available. Thus, Kevin presented nothing documenting his alleged inability to pay child support in 2013.

{¶33} Kevin said that since his bankruptcy plan was confirmed in May 2012, he has been paying the mortgages on his home and rental property, both of which are current; his attorney; accountant; and bankruptcy trustee, but has not paid anything toward his retroactive child support arrears. He said that since September 2011, when the child support order was established for Jaime, his business has not provided him

8

with enough income to pay child support. He said this was why he filed his motion to modify child support.

{¶34} Following the trial, Kevin dismissed his motion to modify child support.

{¶35} On July 29, 2011, the magistrate issued her exhaustive ten-page, single-space decision. The magistrate found that from September 1, 2011 to February 28, 2014, the amount Kevin should have paid Dawn for Jaime in ongoing child support was $20,801. But, Kevin only sent the agency $7,853 toward the ongoing order. Thus, under the ongoing order, the amount due was $12,947. The magistrate found that between September 1, 2011 and February 28, 2014, Kevin met his ongoing child support obligation only six times; he made no payments at all for 18 months; and he made partial payments for a few months. During that period, Kevin paid his other debts and expenses.

{¶36} The magistrate found that in 2012, *Kevin chose to pay* $26,646 in federal taxes, although he only paid $2,480 in ongoing child support. Further, Kevin paid substantial amounts to meet his business and personal expenses. The post-confirmation reports prepared by Mr. Judge show disbursements made by Kevin in the fourth quarter of 2012 of $509,365, of which $0 was paid for child support. In the fourth quarter of 2013, he paid out $367,736, of which only $1,100 was paid in ongoing child support. In the first quarter of 2014, he paid $330,988, of which only $1,000 was paid in ongoing child support. Kevin paid virtually nothing toward his retroactive child support obligation.

{¶37} The magistrate found that Kevin continues to spend $3,750/month on the mortgage on his residence. He employs his wife at an annual salary of $31,200. He

9

has decided to keep his race car valued at $15,000 and his mobile home valued at $5,500.

{¶38} Based on the evidence presented, the magistrate found that Dawn had established a prima facie case of contempt against Kevin for failure to pay court-ordered child support; that Kevin had not established an inability-to-pay defense; and that Kevin was in contempt of the court's August 16, 2011 child support order. The magistrate ordered Kevin to serve 30 days in jail unless he purges himself of this contempt by paying $138.67 per month toward the arrearage of $12,947.74 on the ongoing child support for the period of September 1, 2011 through February 28, 2014. The payments were to begin on July 1, 2014 and continue each month thereafter until the arrearage is paid in full.

{¶39} Kevin filed objections to the magistrate's decision, arguing generally that the magistrate erred in concluding he did not establish his inability-to-pay defense. The trial court overruled Kevin's objections and adopted the magistrate's decision. Kevin appeals the trial court's judgment, asserting two assignments of error. For his first, he alleges:

{¶40} "Whether the trial court abused its discretion in finding appellant failed to establish an inability to pay defense" (Sic throughout.)

{¶41} As a preliminary matter, it is undisputed that the bankruptcy court addressed the issue of the retroactive child support arrearage in the amount of $24,546, as established in the court's August 16, 2011 judgment. Thus, the only issue before the trial court was whether Kevin was in contempt for violating his ongoing child support obligation set forth in the August 16, 2011 judgment, which was determined by CSEA to be $12,947.

10

{¶42} In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order of the court. *Smith v. Smith*, 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶37. Once the movant has met his burden, the burden shifts to the other party to rebut the showing of contempt or to demonstrate an affirmative defense. *Id.* at ¶38. "Once a person seeking contempt has demonstrated a defendant's failure to pay child support, the burden of proof shifts to the defendant to prove his or her inability to pay." *Id. at* ¶41. It is undisputed that Kevin violated the court's ongoing child support order by not paying $12,947; however, he asserted the defense of inability to pay.

{¶43} "The person who failed to comply must show his inability to 'be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance.'" *Keeley v. Keeley*, 12th Dist. Clermont No. CA97-02-013, 1997 Ohio App. LEXIS 3139, *7 (Jul. 21, 1997), quoting *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 Ohio App. LEXIS 1035, *6-*7 (Mar. 22, 1996). This court reviews a trial court's determination on contempt proceedings and the trial court's adoption of a magistrate's decision under the abuse of discretion standard. *Lincoln Health Care, Inc. v. Keck*, 11th Dist. Lake No. 2002-L-006, 2003-Ohio-4864, ¶21; *Fortney v. Willhoite*, 11th Dist. Lake No. 2011-L-120, 2012-Ohio-3024, ¶33.

{¶44} Kevin argues the trial court erred in concluding that in 2012, he received $54,600 in weekly draws "before the net profits of the business are calculated" because, he argues, Mr. Judge testified Kevin's draws were part of his business' net profit of $144,751, not in addition to it. However, this argument is irrelevant since Kevin admitted he uses income from his business to pay his personal expenses, such as his taxes, including the $26,646 in taxes he paid in 2012. Thus, Kevin could have kept his

11

ongoing child support current if he chose to do so. We agree with the trial court's finding that *Cicchini v. Crew*, 8th Dist. Cuyahoga Nos. 74009 and 76954, 2000 Ohio App. LEXIS 5942, *27 (Dec. 18, 2000), is pertinent to this argument ("[c]ases involving child support obligations of persons who own their own businesses are frequently complicated because they have some ability to control and/or report both the business' and their own financial transactions, including income, assets, and disbursements.")

{¶45} Next, Kevin challenges the trial court's finding that the $31,200 he pays to his wife Noel remains in his household and reduces his business' gross income by $31,200. It was undisputed that Noel is Kevin's current wife; that she resides with him at their home; and that she shares living expenses and utilities with Kevin. Thus, it was reasonable for the trial court to find the $31,200 salary Kevin pays Noel reduces the gross income of Kevin's business and remains in their household. As such, the salary Kevin paid Noel is a benefit to him, potentially making other funds he had available to pay child support. However, while the trial court found that Noel's income from Kevin's business remains in their household, the court did not find, as Kevin argues, that it was an available resource to pay Kevin's child support obligation or that Kevin was obligated to use all or any part of it for that purpose.

{¶46} Further, Kevin argues the court erred in finding that, in addition to Noel's $31,200 salary from working for Kevin, she earned an additional $113,000 from her job with the city of Painesville and her horse-boarding business in 2012. However, Noel earned $38,894 from her job with the city and she reported to Mr. Judge that the gross income from her horse-boarding business was $74,953. Thus, the court correctly indicated that Noel earned an additional $113,000. We note, however, that while the court commented Noel's additional income was part of the household income, as with

12

her salary from Kevin's business, the court did *not* find it was an available resource to pay child support or that Kevin had any obligation to use it for that purpose.

{¶47} Next, Kevin argues the trial court erred in finding his wife writes his business checks and decides who will be paid from the money he earns. In fact, Kevin testified his employee, Laura, writes the checks and he implied that she decides what debts will be paid. Thus, while the court erred as to which of his employees writes Kevin's checks, the error is trivial and inconsequential, especially in light of Kevin's testimony elsewhere in the transcript wherein he said that he alone decides who will be paid.

{¶48} In light of Kevin's substantial income in 2011 and 2012; his failure to provide the available documentation for his income in 2013; his control as to which debts would be paid; his decision to pay his taxes, mortgages, utilities, and other expenses, rather than child support; his lavish home and estate; and his race car and mobile home, we cannot say the trial court abused its discretion in finding that Kevin failed to establish his inability-to-pay defense.

{¶49} For his second and final assigned error, Kevin contends:

{¶50} "Whether the decision of the trial court was against the manifest weight of evidence as the court applied incorrect findings of fact in making its decision" (Sic throughout.)

{¶51} In a civil case, an appellate court will not reverse a judgment as being contrary to the weight of the evidence as long as there is some competent, credible evidence supporting the judgment. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279 (1978), syllabus. We must give deference to the trier of fact because it is best able to observe the witnesses and their demeanor and to determine their

13

credibility. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Witness credibility rests solely with the finder of fact. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986).

{¶52} Kevin argues that because he testified he is trying to comply with the court's child support order, the trial court erred in finding him in contempt. However, the court was entitled to believe, as it obviously did, that Kevin's income in 2011 and 2012 was sufficient to pay his ongoing child support, but that he chose to pay other expenses instead. The court could also consider that Kevin was not forthcoming with respect to his income in 2013. He said he had no idea what his income was in 2013 and provided no documentation for it, although such documentation was available. Significantly, his bankruptcy disbursement reports showed large disbursements of at least $500,365 in 2012; $367,736 in 2013; and $330,988 in 2014, and from these amounts, he paid only $2,100 in ongoing child support. Further, Kevin made the conscious choice to maintain a lavish home that required him to pay $3,750 per month, to keep a race car valued at $15,000 and a mobile home valued at $5,500. Kevin's decision to keep these items and to pay huge business and personal expenses instead of his child support seriously undercut his testimony that he is unable to pay child support. And, his testimony concerning his take home pay was obviously false. He said he only brought home $2,600/month (4 times $650/week), yet he also said that he pays the mortgage on his home, gas, electricity, and food, which total more than $6,000/month. Since he says he pays these expenses and he identified no other source of income, he is obviously using his business to pay these expenses.

{¶53} The trial court was entitled to believe, as it obviously did, that Kevin's testimony lacked credibility and that he failed to establish his inability-to-pay defense.

14

**{¶54}** To put this very sad case in perspective, Kevin owed $12,947 in arrears on ongoing child support for the care of his mentally disabled daughter. If he did not want to use his business funds to pay the delinquency, all he had to do to avoid the finding of contempt was to sell his race car, which he valued at $15,000, and he would still have had $2,000 left over for himself.

**{¶55}** For the reasons stated in the opinion of this court, appellant's assignments of error are overruled. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.