[Cite as *Kolenic v. Kolenic*, 2018-Ohio-1106.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| JEFFREY A. KOLENIC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-G-0117** |
| ELIZABETH M. KOLENIC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2011 DC 000845.

Judgment: Affirmed.

*Joseph P. Sontich, Jr.*, 8401 Chagrin Road, Suite 20B, Chagrin Falls, OH 44023 (For Plaintiff-Appellant).

*Scott S. Rosenthal*, Schoonover, Rosenthal, Thurman & Daray, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Jeffrey Kolenic, appeals from the Judgment Entry of the Geauga County Court of Common Pleas, Domestic Relations Division, finding him in contempt. The issues to be determined by this court are whether a party demonstrates an inability to pay child and spousal support as a defense in contempt proceedings when he testifies that he earns less money than in his past employment and whether it is an abuse of discretion to order a party to serve a 30-day jail term under those circumstances. For the following reasons, we affirm the decision of the lower court.

{¶2} On August 9, 2011, Jeffrey filed a Complaint for Divorce from his wife of approximately 11 years, Elizabeth Kolenic. The couple has two children.

{¶3} Elizabeth filed a Motion to Show Cause on September 30, 2013, alleging, inter alia, that Jeffrey failed to pay temporary spousal support. At a hearing on that Motion, Jeffrey testified regarding his decreased income. He was fired from a management position at First Federal of Lakewood in March 2012, in which he made approximately $250,000 per year, after his assistant took a bank compliance test on his behalf. A letter presented showed that he was terminated due to "admission of fraudulent activity." Jeffrey was subsequently hired as a loan officer at Huntington Bank, receiving a $100,000 signing bonus. He described the job as being a "poor fit," and that he and his boss "did not see eye to eye." A document from Huntington was presented that showed he was terminated around May 2013 and was not suitable for rehire.

{¶4} In a July 24, 2014 Magistrate's Decision, subsequently adopted by the trial court, the magistrate found Jeffrey in contempt for failure to pay support and that he did not establish an affirmative defense, emphasizing he had been terminated from two jobs and was responsible for the decrease in his income.

{¶5} On March 12, 2015, a Judgment of Divorce was filed. Pursuant to the parties' separation agreement, Jeffrey was ordered to pay $1,500 a month toward a substantial spousal support arrearage and $1,000 per month in child support, until September 1, 2015, when the child support obligation would increase to $2,100 per month.

{¶6} Elizabeth filed an Amended Motion to Show Cause on May 27, 2016, to

which she attached an affidavit alleging that Jeffrey had not made the foregoing payments.

{¶7} A hearing was held on August 22, 2016, at which the following pertinent testimony was presented:

{¶8} Jeffrey testified that he has been employed as a loan officer at First National Bank since June of 2015. In this job, he must "self-source" or look for business, and is paid commissions. When he began the job he "struggled" and had lost many of his "referral partners, and places and areas in which [he] used to get business from," although he did not specify how he lost particular clients and stated that he had continued to work in the same community or geographical area. He testified that business had "started to pick up" in the past few months. Jeffrey presented his W-2 from 2015, which showed he had been paid $15,933 from the time he became employed at First National. His "goal" was to earn approximately $66,000 in 2016.

{¶9} In relation to this significant decrease in his income, Jeffrey stated that, due to the Dodd-Frank law, the way commissions are earned has changed. He testified that loan officers "took anywhere from a 20 to 50 percent haircut depending [on] where they were working." He had not paid the support payments and medical bills as required by the Judgment Entry of Divorce because of his decreased income.

{¶10} Jeffrey testified that he lives in a home owned by his parents and does not have to pay housing costs, although he sometimes pays utilities. Jeffrey's father, Joseph Kolenic, testified that he pays some of Jeffrey's bills, but Jeffrey pays the mortgage "when he can." Jeffrey coaches two of his children's sports teams, which is beneficial for developing business connections, and has not sought a second job.

**{¶11}** Elizabeth testified that Jeffrey had not made the support payments as required or paid all of the children's medical bills, although he had made payments for one of the children to play multiple sports.

**{¶12}** In a November 3, 2016 Magistrate's Decision, the magistrate found that Jeffrey was in contempt and should be ordered to serve a 30-day jail term, which could be purged by paying the sums owed to Elizabeth. The magistrate emphasized that the parties had agreed at the time of the divorce to attribute an income of $175,000 to Jeffrey, although in the past he had made approximately $250,000 per year. The magistrate concluded that Jeffrey failed to do the following: show he took reasonable steps to comply with the order, demonstrate an inability to pay, provide evidence to substantiate claims of his 2016 earnings, and to document his commissions. Jeffrey's lack of income was attributed to his own misconduct, primarily his two prior terminations.

**{¶13}** Jeffrey filed Amended Objections to Magistrate's Decision on December 28, 2016.

**{¶14}** On April 4, 2017, the trial court issued both a Judgment Entry and a Decision, holding that there were "sufficient findings of fact and conclusions of law to support the Magistrate's Decision" and Jeffrey "failed to establish the affirmative defense of inability to pay." Jeffrey was ordered to serve 30 days in jail and pay a $250 fine, with the opportunity to purge by paying to Elizabeth $31,357.92 and her counsel $2,600 in attorney's fees within 90 days of the judgment, and pay $180 in medical costs within 30 days.

**{¶15}** Jeffrey timely appeals and raises the following assignment of error:

4

{¶16} "The trial court prejudicially erred in affirming the magistrate's ruling that plaintiff-appellant failed to demonstrate inability to pay as a defense to the finding of contempt for failure to pay all amounts of support per the order included in the divorce decree."

{¶17} "A reviewing court 'will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion.'" *Kolleda v. Kolleda*, 11th Dist. Lake No. 2013-L-069, 2014-Ohio-2013, ¶ 42, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). This court has described an abuse of discretion as a judgment "which does not comport with reason or the record," and one in which the court failed "to exercise sound, reasonable, and legal decision-making." (Citations omitted.) *In re Beynenson*, 11th Dist. Geauga No. 2012-G-3066, 2013-Ohio-341, ¶ 12.

{¶18} "[T]he burden of proof for civil contempt is clear and convincing evidence." (Citation omitted.) *Dilley v. Dilley*, 11th Dist. Geauga No. 2012-G-3109, 2013-Ohio-4095, ¶ 23. "Clear and convincing evidence is * * * evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Janson*, 11th Dist. Geauga No. 2005-G-2656, 2005-Ohio-6712, ¶ 33.

{¶19} Jeffrey concedes that he failed to pay child support, spousal support, and medical bills for the children as ordered. "Failure to pay court-ordered child support and alimony constitutes civil contempt." *Dilley* at ¶ 18; R.C. 2705.031.

{¶20} However, Jeffrey argues that the lower court erred by finding he failed to demonstrate his inability to pay as a defense to contempt.

5

**{¶21}** "It is well established in the law of Ohio * * * that a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order." *Stychno v. Stychno*, 11th Dist. Trumbull No. 2008-T-0117, 2009-Ohio-6858, ¶ 38, citing *Courtney v. Courtney*, 16 Ohio App.3d 329, 334, 475 N.E.2d 1284 (3d Dist.1984); *Dilley* at ¶ 25. "Once a person seeking contempt has demonstrated a defendant's failure to pay child support, the burden of proof shifts to the defendant to prove his or her inability to pay." *Smith v. Smith*, 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶ 41; *see State ex rel. Cook v. Cook*, 66 Ohio St. 566, 64 N.E. 567 (1902), paragraph one of the syllabus ("In a proceeding in contempt against a party who has refused to comply with a money decree for alimony, it is not essential that the complaint allege that the party is able to pay the money. The decree imports a finding of the court that he is able to pay, and the burden is on him by allegation and proof to establish his inability.").

**{¶22}** Jeffrey's testimony indicated that, in his current job, he is earning an amount significantly lower than both his previous $250,000 salary and the $175,000 salary the parties had imputed to him. However, the magistrate expressed several grounds for rejecting the inability to pay defense.

**{¶23}** As an initial matter, to the extent that Jeffrey argues that the lower court improperly applied the standard to the facts in reaching its decision, we find no evidence that this was the case. The appropriate standards were stated and applied to the facts. Jeffrey specifically takes issue with the finding that the inability to pay defense can be rejected "due to the obligor's poor decision-making." The magistrate cited poor decision-making as a basis for rejecting the inability to pay defense, citing *Faubel v.*

6

*Faubel*, 7th Dist. Mahoning Nos. 05-MA-101 and 05-MA-210, 2006-Ohio-4679, which is a valid consideration. Courts often consider a contemnor's actions in determining whether he is truly unable to comply with an order or has created the situation leading to the lack of compliance. *Borders v. Borders*, 3d Dist. Crawford No. 3-84-20, 1986 WL 3800, *3 (Mar. 24, 1986) (inability to pay support caused by misconduct or neglect, including quitting one's job, is not a defense); *see also Peach v. Peach*, 8th Dist. Cuyahoga Nos. 82414 and 82500, 2003-Ohio-5645, ¶ 39 ("[i]t appears that the husband's own poor decision-making in not selling the marital home contributed to his inability to comply with the terms of the agreement").

**{¶24}** In relation to the foregoing, the magistrate expressed concerns that Jeffrey was terminated from prior employment, concluding that his asserted inability to pay was the result of his own conduct. In the prior contempt proceedings, the magistrate concluded that Jeffrey was fired from his well-paying job at First Federal due to "fraudulent activity" and was also fired from a second job. These findings were not appealed by Jeffrey and were based on his testimony and documentation provided at the prior hearing. This was a relevant consideration in relation to the cause of his asserted inability to pay.

**{¶25}** Jeffrey takes issue with the magistrate's application of the prior finding that "he effectively admitted he caused his own dismissal from Huntington by violating the bank's lending policies so he would not have to pay back his signing bonus," which he contends was not supported by the evidence.

**{¶26}** While there was no specific testimony that Jeffrey quit his job to receive the signing bonus, the magistrate appeared uncomfortable with the circumstances

7

surrounding the termination and Jeffrey's vague testimony that the job was a "poor fit." We find no abuse of discretion in the lower court's decision to consider the totality of Jeffrey's employment record to determine whether he is truly unable to pay or if his lack of income was due to his own behavior.

{¶27} As further support for its determination that Jeffrey failed to prove his inability to pay defense, the magistrate found that "in light of [Jeffrey's] previous successful career as a loan officer, when he earned about $250,000 per year for ten or more years, his claim that he is now unable to get clients is less than credible." While Jeffrey argues that the record indicates his difficulty in obtaining customers and gaining commissions through his work as a loan officer, it is apparent from the record that the magistrate found this testimony lacking credibility given his past ability to succeed in the industry and community where he continued to work. Witness credibility rests solely with the finder of fact. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶28} Pursuant to the record, Jeffrey had earned approximately $250,000 for the three years before the divorce was filed in this matter. While Jeffrey lost that employment before the divorce was finalized, the parties agreed to impute his income at $175,000. The fact that Jeffrey had started a new job at First National Bank around the time of the divorce was taken into account, with the support obligations increasing over time to allow him to "ramp up his income." When considering ability to pay, it is proper for a trial court to take into consideration the extent to which a party's employment is below his capabilities. *See Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, 967 N.E.2d 246, ¶ 26 (3d Dist.) (finding that the contemnor lacked credibility in her claims that she attempted to find other employment and properly concluding that she was

8

underemployed).

**{¶29}** To the extent that Jeffrey argued the 2010 Dodd-Frank reform law impacted his sales, it is noteworthy that the divorce and separation agreement, wherein Jeffrey agreed to pay the obligations and to the imputed income of $175,000, was filed in 2015. At that time, Jeffrey apparently did not believe he experienced any of the impacts now claimed.

**{¶30}** Finally, the magistrate's decision also noted that Jeffrey failed to demonstrate his income in 2016 as of the time of the hearing and did not show his commissions for that year. This conclusion is supported by the record. Jeffrey himself testified that, at the time of his testimony in August 2016, he was "having the best couple months that [he] had in over five years now." However, it was not made clear what amount of salary this translated to for the purposes of his ability to pay.

**{¶31}** Taking into account all of the factors present here, including Jeffrey's prior experience and ability to earn a substantial income, his failure to provide documentation of his income in 2016, his lack of a sufficient explanation of why he had fewer clients than in his prior employment, and that he was fired from two jobs (one due to acts considered "fraudulent"), we cannot hold that the lower court erred in concluding that Jeffrey failed to establish an inability to pay defense. *See In re Edgell*, 11th Dist. Lake No. 2014-L-126, 2015-Ohio-4427, ¶ 48 (where, inter alia, the contemnor had a previous substantial income, did not provide evidence of his present income, and paid other bills rather than child support, it was not an abuse of discretion to reject his inability to pay defense).

**{¶32}** In his second issue, Jeffrey argues that the trial court acted unreasonably

9

in sentencing him to a jail term of 30 days. He contends that this could cause him to lose his job and further his inability to pay support.

{¶33} Elizabeth correctly points out that Jeffrey filed no objection to the magistrate's decision as to this issue. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion" by filing timely objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶34} Pursuant to R.C. 2705.05(A)(1), a court may impose a $250 fine and a "definite term of imprisonment of not more than thirty days in jail" on an accused found guilty of a first offense of contempt. The jail term that Jeffrey was ordered to serve was permissible under this statute. Jeffrey cites to no case law in support of an argument that the sentence for contempt was an abuse of discretion under these circumstances.

{¶35} Moreover, Jeffrey was given the opportunity to purge himself of the contempt and avoid the jail sentence provided he pays the amounts ordered by the court. "The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered." (Internal citation omitted.) *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980).

{¶36} While Jeffrey argues that the court in *Faubel*, *supra*, allowed the

10

contemnor to serve his sentence on the weekends to preserve his employment, it did not rule that this is a requirement or that failure to do so renders a sentence contrary to law. We find the trial court's sentence was well within its discretion.

{¶37} The sole assignment of error is without merit.

{¶38} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas finding Jeffrey in contempt, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J., concurs in judgment only with a Concurring Opinion,

TIMOTHY P. CANNON, J., concurs in judgment only with a Concurring Opinion.

_____

CYNTHIA WESTCOTT RICE, J., concurring in judgment only with Concurring Opinion.

{¶39} I respectfully concur in judgment only. I agree with the majority opinion that the trial court did not abuse its discretion when it rejected appellant's inability-to-pay defense. Appellant failed to offer sufficient evidence to meet his burden of proof to establish an inability to pay as a defense to contempt. I also agree the sentence imposed by the court for the contempt was well within its discretion and authorized by R.C. 2705.05(A)(1). I concur in judgment only because the legal analysis in this case should not involve any issues beyond the two outlined above.

_____

TIMOTHY P. CANNON, J., concurring in judgment only with Concurring Opinion.

{¶40} I concur with the judgment of the lead opinion but only because of our deferential standard of review. It is undisputed that appellant's imputed income of $175,000.00 was highly exaggerated. That figure should not be disturbed, however, because appellant initially agreed to base the support computation on this figure. Nevertheless, I do not believe that the continued overstatement of imputed income based on past "poor decision making" will ultimately benefit either party. There does not appear to be any authority establishing guidelines as to when the penalty for "poor decision making" should come to an end. In this case, however, that time should come sooner rather than later.