[Cite as *Robinson v. Schreiber*, 2021-Ohio-903.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ANDRE ROBINSON, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-064** |
| VICTORIA ANNE SCHREIBER, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2018 CV 00548.

Judgment: Affirmed.

*Jason L. Carter*, Carterlaw, LLC, 16781 Chagrin Boulevard, Suite 287, Shaker Heights, OH 44120 (For Plaintiff-Appellee).

*Bradley Hull, IV*, Bradley Hull, IV Esq., LLC, 1392 Som Center Road, Mayfield Heights, OH 44124 (For Defendant-Appellant).

*Leah J. Stevenson*, Stevenson & Wagner, LLC, 137 Main Street, Suite 6, Chardon, OH 44024 (Guardian ad Litem).

MATT LYNCH, J.

{¶1} Defendant-appellant, Victoria Schreiber nka Hilditch, appeals the Judgment of the Lake County Court of Common Pleas, Juvenile Division, finding her in contempt of court. For the following reasons, we affirm the decision of the lower court.

{¶2} On April 27, 2018, plaintiff-appellee, Andre Robinson, filed a Complaint for Custody, Visitation, and Support against Hilditch with respect to their child, A.J.R. (dob 09/12/2015). Hilditch filed an Answer and Affirmative Defenses on May 31, 2018.

{¶3} On December 20, 2018, Robinson was awarded parenting time with A.J.R.

{¶4} On April 10, 2019, the juvenile court issued a Judgment Entry adding the following pertinent qualifications to the December 20, 2018 Entry:

> Mother, Victoria Schreiber nka Hilditch, shall remain the designated residential and legal custodian of the minor child, [A.J.R.].
>
> If the minor child does not have daycare / school, all exchanges of the minor child shall occur at the Eastlake Police Department located at 35150 Lakeshore Boulevard, Eastlake, Ohio, 44095. During the exchanges, the minor child's stepfather shall remain in the car and shall not participate in exchanges unless a true emergency arises. Mother may use a well-known adult to the minor child for exchanges.

{¶5} Among other sundry motions, Hilditch filed Motions to Show Cause on May 8, 2019, and August 15, 2019. Robinson filed Motions to Show Cause on June 6, 2019, June 17, 2019, July 29, 2019, September 18, 2019, and an Amended Motion to Show Cause on September 16, 2019.

{¶6} Trial on the pending motions was held before a magistrate on September 16, 2019, and on November 20, 2019. During the course of the hearings, Robinson's July 29 Motion was dismissed.

{¶7} On December 20, 2019, a Magistrate's Decision was issued, ruling that Robinson's June 6 and 17 Motions to Show Cause are well-taken, Robinson's September 16 Amended Motion is well-taken in part, and Hilditch's May 8 and August 15 Motions are not well-taken. The magistrate made the following pertinent conclusions of law:

> The Court finds that both parties appear incapable of and/or unwilling to follow the Court order in place. The current Court order does not require a third party be present for the exchange of the minor child. It requires the minor child's stepfather, Micha Hilditch, to remain in the car and not participate in the exchange unless a true emergency arises. Mother is able to facilitate exchanges but as she reports she is uncomfortable being in Father's presence and is unavailable for visits, she is permitted to use a well-known adult to the minor child for exchanges.

2

The order does not require the parties to get out of the car for exchanges. The minor child is four years old. The parties (or Mr. Hilditch), for example, are able to pull up next to one another, open the door for the minor child, and allow him to walk to the next car. Additionally, either party is permitted to bring a third party if that assists in making the exchange and someone is available. If the minor child is uncomfortable walking to the next car alone and Mr. Hilditch has driven the child that day, Father can retrieve the child from the transporting car or have a third party assist in retrieving the child if one is available. The same can be done at the conclusion of Father's parenting time all without necessitating a third party's presence and with Mr. Hilditch remaining in the car. The intent behind the agreement limiting Mr. Hilditch's involvement in the exchange was to avoid an unnecessary conflict between Father and Mr. Hilditch. On the contrary, the parties have used this term to add even more conflict to an already adversarial situation.

Additionally, at the time the agreement was entered into, the minor child was enrolled in school on Mondays and Fridays and Father was able to pick up/drop off the minor child at school eliminating the need for this additional interaction at the police station except for summers, holidays, and school closings. Mother has removed the minor child from schooling on Mondays and Fridays since the time of the agreement.

Father has proven by clear and convincing evidence that Mother violated the April 10, 2019 Order on Easter weekend 2019, Easter 2019, May 27, 2019, May 31, 2019, June 14, 2019, June 16, 2019, and July 26, 2019, by not making the minor child available to Father for exchanges on those dates. Evidence of only one offer of makeup time was provided.

Mother has proven by clear and convincing evidence that Father violated the April 10, 2019 Order on July 15, 2019, by driving off with the minor child and failing to return him by 8:30 a.m.

{¶8} The violations of the April 10, 2019 Order identified by the magistrate were described as follows:

Easter 2019 was Father's weekend with the minor child. Father was to have the child beginning the Friday before Easter at 5:00 p.m., Mother was to have the child on Easter from 10:00 a.m. until 7:00 p.m., and Father was to have the minor child back from Easter at 7:00 p.m. until Monday morning for the remainder of his weekend time. Mother had previously reported she was unable to facilitate the

3

10:00 a.m. exchange on Easter morning due to third party unavailability. Father and Mother were unable to coordinate a different exchange time for Easter Sunday. Mother and Mr. Hilditch notified Father that a third party was unavailable for the Friday evening exchange so the Friday exchange did not occur. A makeup exchange was not had and Father was not able to have the child Friday or Saturday. After having the minor child all weekend, Mr. Hilditch, a third party, and the minor child showed up for an exchange at 7:00 p.m. on Easter Sunday and Father did not appear.

\* \* \*

May 27, 2019, Memorial Day, was Father's holiday. At 9:31 a.m. Father was notified via Our Family Wizard that due to third party unavailability, there was no one to accommodate an exchange. Father offered to bring a third party to assist with the exchange and no response was provided to Father.

May 31, 2019 was the start of Father's weekend. At 4:16 p.m. Father was notified via Our Family Wizard that a third party was unavailable so the exchange with Father would not occur. Father offered to bring a third party to assist with the exchange and was turned down on this offer.

June 14, 2019 was the start of Father's weekend parenting time. Father and Mr. Hilditch arrived at the Eastlake Police Station. Mr. Hilditch informed Father via Our Family Wizard that he waited at the police station and once he was able to confirm he did not have a third party, he left. Father reported he had a third party. Father was unable to receive the child for the weekend.

June 16, 2019 was Father's Day. Father reported to Mother and Mr. Hilditch via Our Family Wizard he would be at the Eastlake Police Station at 10:00 a.m. At 4:53 p.m., it was communicated to Father that Mother and Mr. Hilditch had a third party at that time and could meet with Father in the next thirty to forty-five minutes. Father did not meet at that time and testified he was over an hour away and was unable to make arrangements on such short notice.

July 15, 2019 was a Monday morning at the end of Father's parenting time with the minor child. Father drove up to the Eastlake Police Station with the minor child. Mr. Hilditch communicated through Our Family Wizard that he was inside the Police Department waiting for the exchange. Father, believing Mr. Hilditch was violating the order stating Mr. Hilditch was to remain in the vehicle, drove off with the minor child. After communications back and forth over Our Family Wizard, the parties met at approximately 5:00 p.m. at the police

4

station with a third party arranged by Mother.

* * *

July 26, 2019 was the start of Father's weekend parenting time. Father arrived at the Eastlake Police Station and between 5:11 p.m. and 5:56 p.m., sent Mother five messages on Our Family Wizard questioning the whereabouts of their son and the exchange. Mother responded the next afternoon stating "Don't understand why you are so worked up? You have gotten half your visits this month, just like you paid half of your child support for the last couple of months." Mother testified she did not have a third party for the visit and believed communicating this to Father would have been "futile." Father was unable to receive the child for that weekend

{¶9} Based on the foregoing, the magistrate determined accordingly:

The Court finds each parent is guilty of contemptuous behavior, however, [it] finds Mother has engaged in contemptuous behavior on significantly more occasions than Father. As such, Father's single contempt finding is negated due to Mother's contemptuous acts. Therefore, Mother, Victoria Hilditch fka Schreiber is found to be in Contempt of Court.

* * *

Mother * * * shall serve 30 days in the Lake County Jail and pay a fine of $250.00 and this sentence and fine shall be suspended based on compliance with all of the terms of the following purge Order:

Father, Andre Robinson, shall be entitled to parenting time on four (4) additional weekends with the minor child. The additional weekends shall take place beginning January 1, 2020 where Father shall be entitled to one additional weekend per month through April, 2020. If the parties cannot agree on a weekend, the weekend shall be the first weekend of the month in which it is not Father's regularly ordered parenting time. Additionally, the parties shall continue to follow the Court Order of April 10, 2019.

{¶10} Hilditch filed Preliminary Objections to the Magistrate's Decision on January 3, 2020, and, after having obtained hearing transcripts, Supplemental Objections on March 17, 2020.

{¶11} On April 15, 2020, the juvenile court overruled Hilditch's Objections and

5

adopted the Magistrate's Decision.

{¶12} On May 14, 2020, Hilditch filed a Notice of Appeal. On appeal, she raises the following assignment of error:

{¶13} "[1.] Whether the trial court abused its discretion in finding Victoria Hilditch in contempt of court."

{¶14} "Contempt of court is defined as disobedience of an order of a court." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Contempt proceedings are civil in nature where the "sanctions are primarily designed to benefit the complainant through remedial or coercive means." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Windham Bank* at paragraph three of the syllabus. The standard of proof in civil contempt proceedings is clear and convincing evidence. *Haun v. Haun*, 11th Dist. Portage No. 2018-P-0108, 2019-Ohio-5408, ¶ 59; *Kolenic v. Kolenic*, 2018-Ohio-1106, 109 N.E.2d 582, ¶ 18 (11th Dist.).

{¶15} "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Denovchek* at 16; *Colagiovanni v. Hayden*, 11th Dist. Lake No. 2018-L-034, 2018-Ohio-4951, ¶ 16 (a finding of contempt, whether made directly by the court or by adoption of a magistrate's finding, is reviewed for abuse of discretion).

{¶16} In the present case, Hilditch was found in contempt for violating the juvenile court's order of April 10, 2019 by preventing Robinson from exercising parenting time on

6

the following dates in 2019: April 19 (Friday), April 21 (Easter Sunday), May 27 (Memorial Day), May 31 (Friday), June 14 (Friday), June 16 (Father's Day), and July 26 (Friday).  It is well-established the failure to comply with a visitation order is proper grounds for the finding of contempt.  *Porter v. Wirick*, 3d Defiance Dist. No. 4-16-02, 2016-Ohio-5773, ¶ 53 (affirming a finding of contempt for violating a "clearly established order for holiday parenting time"); *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849, ¶ 26 (affirming a finding of contempt where "the trial court did not find appellant's explanations for her non-compliance with the court's visitation either credible or sufficient to establish extraordinary circumstances").  Hilditch does not deny that Robinson did not exercise parenting time on these dates but asserts various reasons why she should not be held in contempt.

{¶17}  Hilditch's principal argument is that of inability to comply with the juvenile court's April 10 order with respect to visitation on the dates in question.  This claim of inability rests, in turn, on a particular interpretation of the court's order as to how the exchange of the minor child could be effected.

{¶18}  "As a general rule, the inability of the contemnor to comply with a judgment or order, without fault on the contemnor's part, is a good defense in a contempt proceeding for disobedience of the order."  (Citation omitted.)  *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 35.  "Although inability to comply with a court order is a defense in a contempt proceeding, the burden of proving inability to comply is on the party subject to the contempt charge."  *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 106475, 2018-Ohio-4329, ¶ 58.  However, "the inability to comply must '"be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance."'"  (Citations omitted.)  *Abrams v. Abrams*, 2017-Ohio-4319, 92 N.E.3d 368, ¶

7

22 (2d Dist.); *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15 ("[a] party must take all reasonable steps within her power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why she is unable to comply with the court's order").

{¶19} The order, in relevant part, stated that Robinson would have parenting time on alternating weekends from 5:00 p.m. on Friday until the start of school on Monday but not later than 8:30 a.m. and on certain holidays. When the child was in school or daycare, Robinson could pick up or return the child to the school/daycare which would, in effect, result in the exchange of the child. When the child was not at school or daycare, the exchanges should occur "at the Eastlake Police Department." During these exchanges, the child's stepfather (Micha) "shall remain in the car and shall not participate in the exchanges." Hilditch could "use a well-known adult to the minor child for exchanges."

{¶20} As interpreted by Hilditch, and to some extent by Robinson, the child could not be exchanged if Micha transported the child to the police station without another third-party being present. "[T]he April 10, 2019 Order permitted Victoria Hilditch to use third parties for exchanges when she was unable to do so herself, and explicitly restricted Micha Hilditch from participating in the exchange. Therefore, on the dates Victoria Hilditch was unable to participate * * *, if no third party could attend the exchanges with Micha Hilditch, the exchange could not occur." Appellant's brief at 2. Concomitant with this interpretation was the understanding that exchanges had to occur in the police station itself. Appellant's brief at 4-5.

{¶21} The December 20, 2019 Magistrate's Decision offered an alternative interpretation whereby the exchanges could occur in the police station parking lot and, if Micha had transported the child, Robinson or another party could retrieve and/or deliver

8

the child to Micha's car. This was not the parties' original interpretation, however, and the propriety of holding Hilditch in contempt should be judged by her understanding of the April 10 order. While a party's subjective understanding does not necessarily control how a court's order should be interpreted, the April 10 order was based on "the agreement of the parties," "[i]n lieu of proceeding to Trial" on the Complaint, and, as noted, Robinson shared Hilditch's interpretation to some degree.[1] Conversely, because Hilditch agreed to the terms of the April 10 order, she cannot complain that they were inherently ambiguous or impossible to perform.

{¶22} Hilditch claims that she was unable to comply with the April 10 order on the dates in question because she was unable to participate in the exchange and no other third party except for Micha was available. However, Hilditch's inability to participate in the exchanges is largely due to circumstances of her own making. Hilditch made a decision that she would not personally participate in any exchange involving Robinson because she felt uncomfortable dealing with him. As she testified: "I do not feel comfortable subjecting myself to the intimidation and bullying and narcissistic behaviors that I'm familiar with [Robinson] exhibiting when I have been present at exchanges." Hilditch's feelings of discomfort do not justify her failure to provide Robinson with parenting time. Without questioning the sincerity of her feelings, we note that Micha could have accompanied her to exchanges and that the exchanges were taking place inside of a police station. There is no evidence that her participation in exchanges would have subjected her to any risk of physical or serious psychological harm.

---

1. Robinson's interpretation of the order is not entirely clear. On the one hand, he believed that if he provided a third party then the exchanges could take place even if Micha alone transported the child to the police station. On the other hand, Robinson seemed to believe that exchanges nevertheless had to take place in the police station.

9

{¶23} Alternatively, Hilditch maintains that she was unavailable to participate in exchanges due to her work schedule although she admitted that she would not participate even if not working. We note that on three of the seven days Robinson was denied parenting time Hilditch was not at work (Easter, Father's Day, and Memorial Day). Having to work might justify not complying with the April 10 order if there were no other reasonable means of complying, but this is not the case. Exchanges could have occurred at day care without involving Hilditch or Micha, but Hilditch made a decision to withdraw the child from day care on Mondays and Friday afternoons based on what she considered the child's "best interest." More specifically, Hilditch testified that the decision was made because the child was having behavioral issues and so that he could spend Friday afternoons with Micha. Without more, neither purpose justifies the denial of parenting time. Moreover, Hilditch indicated that she employs various babysitters to watch the child to allow Micha "to do the work he needs on a weekly basis." While there was much testimony as to why Micha's family could not always be present for exchanges, there was no testimony as to why private child-care providers could not have been employed to assist in exchanges.

{¶24} Hilditch raises a myriad of other arguments as to why the finding of contempt was an abuse of discretion that do not directly relate to her inability to comply. She contends Robinson refused to negotiate or compromise to find a solution to the difficulties associated with exchanges and that he refused to accept make-up time when offered. We agree with the magistrate that both parties demonstrated "contemptuous behavior" and have exploited the situation to create unnecessary conflict. However, this is not a defense to violating a court order.

{¶25} Hilditch asserts that she filed motions with the juvenile court to modify the

10

date and place of the exchanges as well as "to lift restrictions on Micha * * * participating in exchanges." Appellant's brief at 3. As noted above, Hilditch agreed to the terms of the April 10 order and failed to demonstrate her inability to comply with them. While she is entitled to seek to modify those terms, it was incumbent upon her to comply with them as long as they remained in effect.

{¶26} As noted above, both parties engaged in contemptuous conduct. Unlike Robinson's conduct, Hilditch's conduct resulted in a significant loss of parenting time for the other party. The juvenile court has sought to remedy this by awarding Robinson parenting time on four additional weekends and to ensure Hilditch's compliance by a finding of contempt. Furthermore, the finding of contempt is purged by Robinson receiving his parenting time. The court's resolution of the matter is neither arbitrary nor unreasonable and, accordingly, we defer to its judgment.

{¶27} The sole assignment of error is without merit.

{¶28} For the foregoing reasons, the Judgment of the Lake County Court of Common Pleas, Juvenile Division, finding Hilditch in contempt of court is affirmed. Costs to be taxed against the appellant.


MARY JANE TRAPP, P.J.,

THOMAS R. WRIGHT, J.,

concur.