[Cite as *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

FREY,

     APPELLEE,                                CASE NO. 5-11-12

     v.

FREY, n.k.a
NIGH,                                     O P I N I O N

     APPELLANT.

Appeal from Hancock County Common Pleas Court,
Domestic Relations Division
Trial Court No. 2001-DR-287

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   November 21, 2011

APPEARANCES:

     John A. Kissh Jr., for appellee.

     William E. Clark, for appellant.

**SHAW, Judge.**

{¶ 1} Appellant, Kimberly Frey, n.k.a. Nigh ("Kimberly") appeals the March 15, 2011 judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, finding her in contempt of its order to pay child support.

{¶ 2} Kimberly and Rick Frey ("Rick") divorced in May 2002. There were three children born from the marriage. Rick was designated as the children's residential parent. The divorce decree did not provide for either party to pay child support. After the entry of the original divorce decree, Kimberly moved to reallocate parental rights in January 2003. The magistrate denied Kimberly's motion.

{¶ 3} In May 2004, Kimberly again moved to modify parenting time and the designation of residential parent and for a review of child support. In May 2005, the magistrate granted Kimberly's motion to modify parenting time, finding that modification of the parenting-time schedule was in the best interest of the children. Kimberly was granted additional visitation with the children. The magistrate identified Rick as the residential parent on the child-support calculation worksheet and concluded that Kimberly should not be required to pay him child support.

{¶ 4} Kimberly subsequently filed a motion for clarification and reconsideration, alleging that the magistrate failed to address her request that Rick pay her child support. In a supplemental order, the magistrate designated Kimberly as the residential parent and obligee on the child-support worksheet for purposes of calculating child support, which yielded a guideline child-support figure of $1,013.68 per month owed by Rick. The magistrate then deviated from the guideline support amount pursuant to R.C. 3119.22 and 3119.23, finding that among other things, requiring Rick to pay guideline support "would be burdensome and contrary to the best interests of the children." Consequently, the magistrate ordered Rick to pay Kimberly $100 a month, per child, or $300 a month, plus processing fees.

{¶ 5} The order was adopted by the trial court. Rick appealed the decision to this court, arguing that the designation of Kimberly as residential parent on the child-support worksheet was in error because the children primarily reside with him. See *Frey v. Frey*, 3d Dist. No. 5-06-36, 2007-Ohio-2991, 2007 WL 1731592.

{¶ 6} This court concluded that Rick was in fact the residential parent based upon the time the children resided with him. We then determined that the trial court erred in designating Kimberly as the residential parent on the child-support calculation worksheet and erred in ordering Rick to pay child support

without finding that it was in the best interest of the children. This court then remanded the matter to the trial court "with instructions to determine if ordering Father to pay Mother child support is in the best interest of the children and, if so, to designate Father as the residential parent in calculating the pertinent child support worksheet." *Frey v. Frey*, 2007-Ohio-2991, 2007 WL 1731592, ¶ 37.

{¶ 7} On remand, the magistrate issued a decision finding that ordering Rick to pay child support was in the best interest of the children. It is apparent from the record that no additional evidence was taken prior to the issuance of the magistrate's decision on remand. Rick filed objections to the magistrate's decision, and the trial court adopted the decision.

{¶ 8} Rick appealed to this court for the second time. *Frey v. Frey*, 3d Dist. No. 5-09-11, 2009-Ohio-5275, 2009 WL 3165582. On October 3, 2009, we concluded that the trial court made no determination on whether there had been a change of circumstances sufficient to warrant a modification in the child-support order and reversed the trial court's decision awarding Kimberly child support. *Id.* at ¶ 15.

{¶ 9} On October 13, 2009, Rick filed a motion requesting the magistrate to grant him a judgment against Kimberly for the amount he erroneously paid her in child support over the past several years. Rick argued that since he has been making his monthly payments of $300, plus processing fees, the Hancock County

Child Support Enforcement Agency ("HCCSEA") has collected and dispersed a total of $13,519.16 to Kimberly. Based on this court's decision finding that the prior child-support order was made in error, Rick requested the court to issue him a lump-sum repayment, plus statutory interest, for his overpayment to Kimberly. Rick also requested that Kimberly be made subject to a "seek work" program through HCCSEA, if the court found her to be unemployed or voluntarily underemployed.

{¶ 10} On December 31, 2009, Rick filed a motion to modify his child-support obligation. In the same motion, he also requested the trial court to reimburse him for the funds he paid to Kimberly under its previous child-support order.

{¶ 11} In the interim, Kimberly appealed this court's decision in *Frey v. Frey*, 3d Dist. No. 5-09-11, 2009-Ohio-5275, 2009 WL 3165582, to the Supreme Court of Ohio. On February 10, 2010, the Supreme Court declined to accept the case for review. The parties made continued efforts to resolve the overpayment issue.

{¶ 12} On June 9, 2010, the trial court held a hearing on Rick's motions. At the hearing, the parties advised the court that they had resolved all the issues pending at the time. The parties recited their agreement on the record and submitted a proposed agreed judgment entry for the trial court's review. On

August 4, 2010, the trial court approved and adopted the parties' agreement,

finding it to be "fair, equitable, and in the best interests of the children."

{¶ 13} The August 4, 2010 agreed judgment entry outlined the following

orders:

1. All monies held in escrow by the Child Support Enforcement Agency shall be released immediately to the Father, Rick Frey.

2. The Father's current Child Support withholding shall be terminated immediately.

3. The Mother, Kimberly Nigh, shall pay a lump sum to the Father, Rick Frey, in the amount of $1,000.00, to be paid immediately.

4. After the termination of the Father's Child Support obligation and upon receipt of the lump sum herein, Mother will owe $9,823.00 to Father for the overpayment of Child Support.

5. Mother shall pay child support to Father in the amount of $356.57 per month, effective as of January 1, 2010. In addition, Mother shall pay Father $72.00 per month towards the overpayment she received. In addition, Mother shall pay any processing fees in accordance with the Ohio Revised Code. All payments, including processing fee[s] at the legal rate shall be payable through the Ohio Office of Child Support. A copy of the Child Support calculations is attached hereto.

6. Mother shall immediately establish an account with a financial institution under the jurisdiction of the court and maintain in that account funds sufficient to satisfy her child support obligation set forth herein. Mother shall provide the Hancock County Child Support Enforcement Agency information regarding the account and shall take whatever steps necessary for child support payments to be automatically withdrawn from said account.

7.    The Mother shall be subject to seek a work order [sic].

8.    Court costs shall be divided equally between the parties.

{¶ 14} On November 8, 2010, HCCSEA filed a motion to show cause and a petition for contempt, on Rick's behalf, alleging that Kimberly had failed to pay child support, as previously ordered by the trial court on August 4, 2010. On January 19, 2011, the trial court held a hearing on the contempt matter. Kimberly provided testimony concerning her efforts and ability to pay her child-support obligation.

{¶ 15} On March 15, 2011, the trial court found that Kimberly had satisfied the lump-sum payment of $1,000 to Rick, but had failed to make the monthly child-support payments, without justification, as directed by the August 4, 2010 agreed judgment entry. Consequently, the trial court found Kimberly in contempt of court because she failed to make the monthly child-support payments as ordered by the trial court. The trial court ordered the following as a sanction for Kimberly's contempt of court.

> It is further ordered that the Defendant is hereby sentenced to a term of ten (10) days in the Hancock County Justice Center for violation of the court's order; however, this sentence is hereby suspended upon the following conditions:
>
> 1.    Defendant shall seek employment sufficient to earn a minimum of $1,282.00 per month, which is the equivalent of a salary at a minimum wage hourly rate of $7.40 for forty hours per week.

2.  Until such time as the Defendant is employed and earns $1,282.00 per month, the Defendant shall seek work and complete the reporting forms issued by the HCCSEA and shall return one completed form each week to her case manager at the HCCSEA.

3.  The Defendant shall immediately contact the HCCSEA regarding any changes in her residence address or place of employment.

4.  The Defendant shall pay the child support as presently owed on a monthly basis.

This matter shall be continued for further review upon the call of the court.  The Defendant shall pay all costs associated with this motion within thirty (30) days of the filing of this entry.

{¶ 16} Kimberly now appeals the trial court's finding of contempt, alleging the following assignments of error.

## Assignment of Error No. I

The trial court erred and abused its discretion when it held defendant in contempt of court for violation of a previous order because appellant was unable to pay yet made efforts to meet her obligation.

## Assignment of Error No. II

The trial court erred and abused its discretion when it imposed upon appellant an order to obtain employment or provide written verification of attempts to obtain full time, minimum wage employment.

## Assignment of Error No. III

The trial court erred and abused its discretion when it imposed upon appellant an order imposing penalties but no opportunity to purge herself of the contempt charge.

{¶ 17} At the outset, we note that under Ohio law, "'[c]ontempt of court consists of two elements. The first is a finding of contempt of court and the second is the imposition of a penalty or sanction, such as a jail sentence or fine. Until both a finding of contempt is made and a penalty [is] imposed by the court, there is not a final order. The mere adjudication of contempt is not final until a sanction is imposed.'" *Cooper v. Cooper* (1984), 14 Ohio App.3d 327, 328-329, 471 N.E.2d 525, quoting *Chain Bike v. Spoke 'N Wheel, Inc.* (1979), 64 Ohio App.2d 62, 64, 410 N.E.2d 802. On appeal, HCCSEA contends that the trial court's order finding Kimberly in contempt of court is not a final, appealable order because it imposed a suspended jail sentence, thereby not satisfying the second element. We disagree. It is well within the authority of the trial court to suspend a sentence to afford an accused contemnor an opportunity to purge himself of the contempt. See generally *State ex rel. Turner v. Bremen* (1928), 118 Ohio St. 639, 163 N.E. 302; see also *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (stating that a conditional prison sentence may be imposed for civil contempt); *Abernethy v. Abernethy*, 8th Dist. No. 92708, 2010-Ohio-435, 2010 WL 457133, ¶ 37 ("The addition of the sentence, albeit, suspended, supplies the second element rendering the order final"). Accordingly, we conclude that the

trial court's order finding Kimberly in contempt of court is a final, appealable order.

*First Assignment of Error*

{¶ 18} In her first assignment of error, Kimberly argues that the trial court abused its discretion in finding her in contempt of court. Contempt is defined in general terms as disobedience of a court order. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 554, 740 N.E.2d 265; see R.C. 2705.02(A). "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus.

{¶ 19} In the case sub judice, Kimberly does not dispute her disobedience of the August 4, 2010 agreed judgment entry. However, she argues that she cannot be held in contempt of court because she presented an affirmative defense of her inability to pay the child-support obligation ordered by the trial court. A prima facie case of contempt is established when the order is before the court along with proof of the contemnor's failure to comply with it. *Dzina v. Dzina*, 8th Dist. No. 83148, 2004-Ohio-4497, 2004 WL 1902566. Inability to pay support is a valid defense in a contempt proceeding. *Courtney v. Courtney* (1984), 16 Ohio

App.3d 329, 334, 475 N.E.2d 1284. The party who failed to comply with the court order to pay support bears the burden of proving an inability to pay. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085. If a party makes a good-faith effort to pay support, contempt is not justified. *Courtney*. When reviewing a finding of contempt, an appellate court applies an abuse-of-discretion standard. See *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249.

{¶ 20} On appeal, Kimberly essentially argues that her inability to pay her child-support obligation is through no fault of her own. She also argues that she has made efforts to comply with the trial court's order by paying the $1,000 lump sum to Rick, as required by the August 4, 2010 agreed judgment entry, and by making five $20 installments towards her child-support obligation.

{¶ 21} At the January 19, 2011 contempt hearing, Kimberly testified that at the time of the August 4, 2010 agreed judgment entry, she worked as a realtor for ERA Noakes Realty Group. Kimberly testified that since the entry of the child-support order, she had not earned any income as a realtor because she had not participated in any real estate closings between August 2010 and the time of the January 2011 contempt hearing. Kimberly explained that she started a part-time job in December 2010, about a month prior to the contempt hearing, working for Peterman & Associates doing research. There, she earned $12 an hour, but had only worked 20 to 25 hours during the past two-week pay period. Kimberly

explained that she previously worked with Peterman & Associates in 2009 and that her hours were less in the winter months because there is a seasonal need for her position at the company. Kimberly also testified that the she has tried to find additional employment by answering ads and filling out applications online, but has been unsuccessful in getting hired.

{¶ 22} Kimberly admitted that her husband provided for all her financial needs, such as the mortgage payment, her car payment, and child care for their eight-year-old daughter, who is the child from her current marriage and not subject to the child-support order at issue.

{¶ 23} The evidence also demonstrates that payments towards Kimberly's child-support obligation were made in the amounts of $55.18 and $69.98 through Kimberly's employer on December 14 and 28, 2010. As previously mentioned, Kimberly also paid five $20 installments toward her child-support obligation on January 8, 2011. In reviewing the trial court's judgment entry finding Kimberly in contempt, the trial court determined that Kimberly had failed to prove the affirmative offense of her inability to pay her child-support obligation.

{¶ 24} Kimberly argues that the fact that she earned no income as a realtor between August 2010 and January 2011 is sufficient to prove her inability to pay her child-support obligation. Kimberly also argues that the fact that she is

working fewer hours at her part-time position because work is slower in the winter months than in the warmer months is not within her control.

{¶ 25} However, the record demonstrates that Kimberly held the same position as a realtor with the same company when the parties submitted the August 4, 2010 agreed judgment entry to the trial court. At the time Kimberly negotiated this agreement with Rick, she was purportedly able to afford the payments stated in the child-support order based upon her employment status at the time. However, rather than obtain other employment or contact HCCSEA about her alleged financial hardship, Kimberly simply failed to make *any payments* toward her ongoing child-support obligation for nearly four months, following the entry of the August 4, 2010 child-support order until December 2010. Only after HCCSEA filed its petition for contempt did Kimberly obtain other, part-time employment at Peterman & Associates in mid-December of 2010 and subsequently make the nominal payments previously mentioned.

{¶ 26} Even though Kimberly testified that she had attempted to find other employment during this time, the trial court is still free to determine her credibility on the issue and assign weight to her testimony accordingly. It is evident that the trial court was not persuaded by Kimberly's testimony that her inability to comply with the court's child-support order was through no fault of her own, but rather that these were circumstances within her control—i.e., that Kimberly was

voluntarily underemployed. See *Piciacchia v. Piciacchia*, 5th Dist. No. 2006CA00286, 2007-Ohio-2328, 2007 WL 1413216, ¶ 28 (stating that trial court did not err in finding former husband voluntarily underemployed, which negated his affirmative defense of inability to pay, because the husband did not seek alternative employment during slow work periods).

{¶ 27} Kimberly also argues that the efforts she made to pay her child-support obligation precludes the trial court from finding her in contempt of court. Kimberly attributes her satisfaction of the $1,000 lump-sum payment as evidence of her efforts. However, this lump sum was negotiated by the parties as a payment to be made immediately upon the signing of the August 4, 2010 agreed judgment entry. Moreover, the trial court was free to assess whether Kimberly's gesture in making the $100 payment one week prior to the contempt hearing constituted a good-faith effort to pay her child-support obligation.

{¶ 28} Based on the evidence before us, we find that the trial court did not err in finding Kimberly in contempt of its August 4, 2010 agreed judgment entry. Kimberly's first assignment of error is overruled.

*Second and Third Assignments of Error*

{¶ 29} We elect to discuss Kimberly's second and third assignments of error together because they are interrelated.

{¶ 30} In her remaining assignments of error, Kimberly challenges the trial court's contempt sanction. Specifically, Kimberly maintains that the trial court abused its discretion (1) when it suspended her ten-day jail sentence on the conditions that she obtain full-time employment and provide verification to HCCSEA of her attempts to obtain full-time employment and (2) when it imposed penalties upon her without providing her an opportunity to purge the contempt.

{¶ 31} It is undisputed by the parties that Kimberly was found to be in civil contempt for her disobedience of the August 4, 2010 agreed judgment entry in failing to pay her child-support obligation. "Civil contempt renders punishment that is remedial or coercive and for the benefit of the complainant. Prison sentences are conditional." *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 416 N.E.2d 610. Any sanction for civil contempt must allow the party who is in contempt an opportunity to purge the contempt. *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 712, 681 N.E.2d 1383.

{¶ 32} In the present case, the trial court imposed a ten-day jail sentence on Kimberly as a contempt sanction. However, the trial court suspended the sentence subject to Kimberly's compliance with four conditions. The first two conditions in essence require Kimberly to obtain a full-time job making at least minimum wage and to submit weekly verifications to HCCSEA of her efforts to obtain such employment until she is hired. The third condition required Kimberly to inform

HCCSEA of any residence or employment change, and the fourth condition mandated that Kimberly "pay the child support as presently ordered on a monthly basis."

{¶ 33} After our review of these conditions, we have three specific concerns. First, it is not clear from the language used in the judgment entry whether these four conditions are conditions on the ten-day jail sentence or whether they are an attempt to create an opportunity for Kimberly to purge the contempt. Notably, the trial court did not use the word "purge" or otherwise characterize its decision in terms of an opportunity to purge anywhere in its judgment entry when imposing the contempt sanction.

{¶ 34} Second, we find the condition simply requiring Kimberly to "pay the child support as presently ordered on a monthly basis" to be ambiguous because there are at least three components of the August 4, 2010 child-support order that are not specifically identified in this condition. In particular, the "child-support" order at issue specifies two distinct payments to be made by Kimberly to HCCSEA each month—Kimberly's *ongoing monthly child-support* obligation of $356.57 and Kimberly's obligation to pay $72 a month for Rick's *prior overpayment to her in child support*. In addition to these two payments, there is a third component to the child-support order, which is the *arrearage* for the ongoing

monthly child support in the amount of $356.57 that Kimberly has failed to pay from January 1, 2010 to the contempt hearing on January 16, 2011.

{¶ 35} The trial court did not delineate which of these components of the child-support order Kimberly must comply with in order to satisfy the fourth condition. This distinction is significant because several appellate courts have held that a purge order may provide for suspension of a jail sentence on condition that the contemnor pays an *arrearage*; however, those courts have also held that a purge order may not regulate future conduct by conditioning the suspension of a jail sentence on the contemnor making payments on current support obligations. See, e.g., *Marden v. Marden* (1996), 108 Ohio App.3d 568, 571, 671 N.E.2d 331; *Tucker v. Tucker* (1983), 10 Ohio App.3d 251, 252, 461 N.E.2d 1337; *Kungle v. Kungle*, 5th Dist. No. 2006CA00367, 2007-Ohio-4929, 2007 WL 2753175. Accordingly, even if we were to construe the fourth condition as an opportunity to purge, it would not be in accord with the decisions of other appellate courts to the extent that it merely required Kimberly to pay her current ongoing child-support obligation.

{¶ 36} Third, we find no error in the trial court's decision to require Kimberly to seek work at a minimum-wage level for two reasons: (1) The trial court determined that Kimberly's previous inability to meet her monthly child-support obligation was within her control and (2) Kimberly was on notice that she

may be subject to a seek-work order because it was one of the terms she agreed to in the August 4, 2010 agreed judgment entry. However, in terms of an opportunity to purge, we find it problematic that there is no deadline for her compliance set forth in the trial court's judgment entry. Notably, none of the conditions established by the trial court contain a time limitation for Kimberly's compliance. In other words, it is not clear exactly how long Kimberly must comply with the directives set out in the judgment entry until she is deemed to be in compliance with the conditions—or alternatively is deemed to have purged her contempt.

{¶ 37} In sum, given the cumulative effect of our concerns outlined above, we find that it is unclear whether the trial court provided Kimberly with a valid and ascertainable opportunity to purge its finding of civil contempt. Therefore, we must conclude that in the absence of a clear opportunity to purge the contempt, the trial court erred in imposing the contempt sanctions as they are presently stated. For the reasons previously discussed and to this extent only, Kimberly's second and third assignments of error are sustained.

{¶ 38} Based on the foregoing the judgment of the Hancock County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part

and reversed in part,
and cause remanded.

**ROGERS, P.J., and WILLAMOWSKI, J., concur in judgment only.**

**ROGERS, Presiding Judge, concurring separately.**

{¶39} I concur with the majority that this case must be reversed, but I do so for different reasons.

{¶40} In her first assignment of error Kimberly has argued an inability to pay. However, the amounts due were negotiated by her and her counsel. The amounts were not an arbitrary figure imposed by the trial court. She negotiated the amounts and assured the trial court and Rick that she could and would pay according to the negotiated agreement, and by that agreement she avoided a pending motion for contempt. I do not believe that the alleged change in circumstances was anything she did not or could not have foreseen when she negotiated her way out of the prior motion for contempt. Therefore, I concur that the finding of contempt was proper and would overrule the first assignment of error.

{¶41} The second and third assignments of error are sufficiently related to be considered together. The proper procedure in civil-contempt proceedings,

after making a finding of contempt, is to place the contemnor on notice of the intended sanction or penalty, and then the trial court must allow the contemnor an opportunity to purge the contempt, that is, to do what was ordered or to eliminate a deficiency.

{¶42} Some might read the trial court's judgment entry imposing a suspended sentence as an inartfully stated opportunity to purge. Treated as such, this would result in a nonfinal order, and we would be required to dismiss this appeal. However, I would hold that the procedure followed by the trial court was improper and reverse with instructions to allow the contemnor the opportunity to purge.

{¶43} It is apparent in this case that the trial court made a proper finding of contempt, but then used the wrong procedure to impose a sentence. The trial court here announced a sentence and then suspended the sentence on certain conditions. The result is not the same as an opportunity to purge, particularly when the conditions imposed have no relationship to the deficiency that gave rise to the contempt. When the contempt is based on failure to pay support, the purge must relate to paying what has not been paid, not to paying in the future or doing other acts in the future. For these reasons, I would sustain the appellant's second and third assignments of error.

{¶44} Accordingly, a reversal is necessary in order for the trial court to put the appellant on notice of a potential penalty and for the trial court to give the appellant an opportunity to purge on conditions that properly relate to the acts of contempt.