[Cite as *McAdoo v. McAdoo*, 2022-Ohio-1550.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


LAURA MCADOO, NKA PARROTT,

                               CASE NO. 1-22-01

    PETITIONER-APPELLANT,

   v.

PHILIP MCADOO,                      O P I N I O N

    PETITIONER-APPELLEE.


Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 2015 0496

**Judgment Affirmed**

**Date of Decision:  May 9, 2022**


**APPEARANCES:**

   *Laura Parrott*, Appellant

   *Andrea M. Bayer* for Appellee

**WILLAMOWSKI, J.**

{¶1} Petitioner-appellant Laura N. McAdoo ("Laura"), now known as Laura N. Parrott, appeals the judgment of the Domestic Relations Division of the Allen County Court of Common Pleas, alleging that the trial court erred in ordering her to pay Philip J. McAdoo ("Philip") an amount equivalent to one-half of a tax obligation from 2014 and erred in finding her in contempt. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Laura and Philip were married in 1992. Doc. 1. On November 24, 2015, Laura and Philip filed a petition for dissolution of marriage. Doc. 1. At this time, the parties had one minor child, M.M. Doc. 1. The parties signed a separation agreement with the following provision:

> **The parties agree that there is an I.R.S. debt from the tax year 2014, in the rough amount of $8,000.00, which each party shall be responsible for one-half of the outstanding tax debt.**

Doc. 2, 14. Further, the shared parenting plan contained the following provision:

> **The parties agree that the Father shall be entitled to any tax exemption for [M.M.] * * * in the tax year 2015 and all subsequent years thereafter.**

Doc. 3, 14. On January 13, 2016, the trial court issued a decree of dissolution for Laura and Philip. Doc. 14. The decree of dissolution incorporated the separation agreement and shared parenting plans. Doc. 14.

{¶3} On September 25, 2020, Philip filed a motion for a citation in contempt that contained two main allegations against Laura. Doc. 21. First, he alleged that Laura failed to pay one-half of the unpaid tax debt from 2014 in violation of the separation agreement. Doc. 21. Second, he alleged that Laura had claimed M.M. on her taxes in 2018 and 2019 in violation of the shared parenting plan. Doc. 21. By this time, no modifications had been made to the separation agreement or the shared parenting plan. Tr. 3, 95. Doc. 35.

{¶4} On June 2, 2021, a hearing was held before a magistrate on Philip's motion for a contempt citation. Doc. 35. Both Philip and Laura testified at this hearing. Tr. 2, 71. On June 10, 2021, the magistrate issued a decision that found Laura in contempt on both of the allegations raised by Philip. Doc. 35. Laura then filed objections to the magistrate's decision. Doc. 36, 44.

{¶5} On November 29, 2021, the trial court issued a modification of the magistrate's decision. Doc. 47. The trial court found Laura in contempt for claiming M.M. on her taxes. Doc. 47. But the trial court did not find Laura in contempt for failing to pay for one-half of the state taxes that were owed in 2014 because it found the wording of this provision in the separation agreement was ambiguous. Doc. 47. The trial court then clarified the meaning of this provision and ordered Laura to pay Philip the equivalent of one-half of the total amount of state taxes that had been owed in 2014. Doc. 47, 49. On December 3, 2021, the trial court issued its judgment entry. Doc. 49.

-3-

{¶6} Laura filed her notice of appeal on January 3, 2022. Doc. 50. On appeal, she raises the following two assignments of error:

**First Assignment of Error**

**The trial court abused its discretion when it ordered Appellant to pay half of the unpaid Ohio state taxes from the 2014 tax year when the separation agreement unambiguously stated that she was only obligated for half of the I.R.S. 2014 tax debt.**

**Second Assignment of Error**

**The trial court abused its discretion when it found Appellant in contempt for claiming the minor child [M.M.], as a dependent on her 2018 and 2019 tax returns, when Philip didn't execute his entitlement to claim her, by voluntarily not claiming her on his 2018 and 2019 tax return and allowed Laura to. And the trial court abused its discretion when it interpreted the TAX EXEMPTION clause to mean it was forbidden for Laura to claim [M.M].**

For the sake of analytical clarity, we will consider Laura's second assignment of error before her first assignment of error.

*Second Assignment of Error*

{¶7} Laura argues that Philip chose not to claim M.M. on his taxes and that the trial court, therefore, erred in finding her in contempt in this matter.

Legal Standard

{¶8} "Contempt is defined in general terms as disobedience of a court order." *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, 967 N.E.2d 246, ¶ 18 (3d Dist.). "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its

functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "The law surrounding contempt was created to uphold and ensure the effective administration of justice, secure the dignity of the court, and affirm the supremacy of law." *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 39. "A common pleas court has both inherent and statutory power to punish contempts * * *." *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 96 (2d Dist.), quoting *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693, 694 (1992). *See* R.C. 2705.02. *See also Deitz v. Deitz*, 2017-Ohio-8395, 99 N.E.3d 997, ¶ 10 (3d Dist.) ("A trial court has inherent authority to enforce its prior orders through contempt.").

{¶9} "Contempts may be classified as direct or indirect." *Scherer v. Sherer*, 72 Ohio App.3d 211, 213, 594 N.E.2d 150, 151 (3d Dist.).

> **Direct contempt occurs in the presence of the court in its judicial function. R.C. 2705.01. Indirect contempt involves behavior that occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders. *State v. Drake* (1991), 73 Ohio App.3d 640, 643, 598 N.E.2d 115 [(8th Dist.)].**

*Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 11. "Contempts * * * are also classed as being either civil or criminal." *Scherer* at 214. "The purpose to be served by a criminal contempt proceeding is punishment of the offender and, thus, vindication of the justice system." *Id*.

> **Civil contempt is remedial or coercive in nature and will be imposed to benefit the complainant. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 139, 472 N.E.2d 1085. Normally, contempt proceedings**

**in domestic relations matters are civil in nature because their purpose is to coerce or encourage future compliance with the court's orders.** *Turner v. Turner* **(May 18, 1999), [10th Dist.] Franklin App. No. 98AP-999[, 1999 WL 356279,] citing** *Smith v. Smith* **(1980), 70 Ohio App.2d 87, 89, 434 N.E.2d 749 [(10th Dist.)].**

*Fidler* at ¶ 11. "If the contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous and not subject to dual interpretations, and the contemnor must have knowledge of the order." *City of Marysville v. Wilson*, 3d Dist. No. 14-94-8, 1994 WL 378992, *2 (July 20, 1994), quoting *In re Contempt of Gilbert*, 8th Dist. Cuyahoga No. 64299, 1993 WL 526788, *2 (Dec. 16, 1993).

{¶10} "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Deitz* at ¶ 10, quoting *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268, 675 N.E.2d 1345, 1347 (2d Dist. 1996). "While there must be clear and convincing evidence for the trial court to find someone in contempt, the decision of whether to find someone in contempt lies within the sound discretion of the trial court, and * * * [an appellate] court will not reverse * * * [the trial court's] decision absent an abuse of discretion." *Hall v. Hall*, 3d Dist. Hardin No. 6-10-01, 2010-Ohio-4818, ¶ 36. "A mere error in judgment does not constitute an abuse of discretion." *Schwieterman v. Schwieterman*, 3d Dist. Logan No. 8-19-49, 2020-Ohio-4881, ¶ 12. "Rather, a determination that is arbitrary, capricious, or unreasonable is an abuse of discretion." *Id.*, citing *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-

8019, ¶ 26. An appellate court may not substitute its judgment for that of the trial court. *Pelger v. Pelger*, 3d Dist. Logan No. 8-18-36, 2019-Ohio-1280, ¶ 10.

Legal Analysis

**{¶11}** As an initial matter we note that the provision in the shared parenting plan that addresses the tax exemption for M.M. is not ambiguous. This provision clearly states "that the Father shall be entitled to any tax exemption for [M.M.] * * * in the tax year 2015 and all subsequent years thereafter." Doc. 3, 14. In her brief, Laura concedes that this "clause entitled Philip to claim [M.M.] * * * of all exemptions from 2015 and every year after that." Appellant's Brief, 13.

**{¶12}** Nonetheless, Laura asserts on appeal that Philip "voluntarily chose not to claim" M.M. on his taxes; that she was, therefore, permitted to claim M.M. on her taxes; and that the trial court erred in holding her in contempt. Appellant's Brief, 5. However, Laura has not identified any evidence in the record that supports these assertions. At the hearing, Laura testified that she claimed M.M. as a dependent on her taxes in 2018. Tr. 75. She admitted that Philip then called her and informed her that he "was supposed to claim" M.M. as a dependent. Tr. 76. Laura testified that she then claimed M.M. as a dependent on her taxes in 2019 and that Philip contacted her again about this matter. Tr. 77.

**{¶13}** Further, Philip testified that he was able to claim M.M. as a dependent on his taxes without any issues in 2016 and 2017. Tr. 4. However, when he attempted to claim M.M. on his taxes in 2018 and 2019, his taxes were rejected

because Laura had claimed M.M. Tr. 4-6. Ex. I, J. He stated that he had to refile his taxes without claiming an exemption for M.M. in 2018 and 2019. Tr. 6. Thus, rather than do what was necessary to comply with the court order and allow Philip to claim M.M. on his taxes, Laura opted to claim M.M. on her taxes. Having reviewed the materials in the record, we conclude that the trial court did not abuse its discretion in finding Laura in contempt in this matter. Laura's second assignment of error is overruled.

### First Assignment of Error

**{¶14}** Laura argues that that the trial court erred by ordering her to pay one-half the amount of taxes that had been owed to the state in 2014.

### Legal Standard

**{¶15}** "[A] trial court has the authority to properly clarify the meaning of a decree in the event the decree is ambiguous." *In re Kuntz*, 183 Ohio App.3d 154, 2009-Ohio-3316, 916 N.E.2d 522, ¶ 11 (3d Dist.). *See Proctor v. Proctor*, 122 Ohio App.3d 56, 59, 701 N.E.2d 36, 37 (3d Dist. 1997), quoting *Troha v. Troha*, 105 Ohio App.3d 327, 332, 663 N.E.2d 1319, 1322 (2d Dist. 1995) ("In enforcing a separation agreement that has been incorporated into a divorce decree, the trial court has the authority to * * * clarify any confusion over the interpretation to be given a particular clause."). "A clause is ambiguous where it is subject to more than one interpretation." *Butcher v. Butcher*, 8th Dist. Cuyahoga No. 95758, 2011-Ohio-2550, ¶ 10. The issue of "whether an ambiguity exists in a prior decree is a question

of law" that is subject to a de novo standard of review on appeal. *Kunz* at ¶ 13. *See also Blair v. Blair*, 3d Dist. Paulding No. 11-15-04, 2016-Ohio-256, ¶ 13.

{¶16} If an ambiguity exists, "a trial court has discretionary authority to interpret the agreement and clarify the ambiguity." *Roxburgh v. Richardson*, 9th Dist. Summit No. 29629, 2021-Ohio-2229, ¶ 15. "In making such determination, the trial court may consider the intent of the parties and the equities involved." *Meyer v. Meyer*, 2016-Ohio-8100, 76 N.E.3d 743, ¶ 14 (12th Dist.). "An interpretive decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion." *Landry v. Landry*, 2017-Ohio-564, 85 N.E.3d 313, ¶ 11 (2d Dist.), quoting *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist. 1993).

Legal Analysis

{¶17} At the hearing on the contempt motion, Philip introduced tax records that indicated the parties had owed roughly $1,800.00 in federal taxes and roughly $7,000.00 in state taxes from 2014. Doc. 35, 47. *See* Doc. 21, Ex. A. Thus, the total amount unpaid taxes for the parties from 2014 was roughly $8,800.00. Doc. 35, 47. The separation agreement contained the following provision regarding an unpaid tax debt:

> **The parties agree that there is an I.R.S. debt from the tax year 2014, in the rough amount of $8,000.00, which each party shall be responsible for one-half of the outstanding tax debt.**

Doc. 2, 14. In his contempt motion, Philip argued that Laura had failed to comply with this provision because she had not yet paid for one-half of the roughly $8,000.00 tax debt. Doc. 21, Ex. A. However, Laura argues that she was only required to contribute to the unpaid federal taxes from 2014 because this provision only mentions "an I.R.S. debt." Doc. 2, 14.

{¶18} On appeal, Laura asserts that this provision is not ambiguous. However, the parties below advanced contradictory interpretations of this provision. Their arguments before the trial court make clear that this provision was susceptible to multiple, reasonable interpretations and was, therefore, in need of clarification from the trial court. Having reviewed the materials in the record, we conclude that the trial court did not err in finding this provision to be ambiguous. We turn now to reviewing the trial court's interpretation of this provision.

{¶19} At the hearing before the magistrate, Philip testified that the intent of the separation agreement was that the parties would each pay one-half of the roughly $8,000.00 of unpaid state and federal taxes from 2014. Tr. 15. Laura testified that she was aware that the separation agreement contained an obligation of $8,000.00 in unpaid taxes from 2014, though she noted that no state taxes were expressly referenced in the separation agreement and stated that Philip had the relevant tax records in his possession. Tr. 80. She further stated that she believed that the obligation had been "taken care of" and that she did not owe any amount of money for the unpaid taxes from 2014. Tr. 105.

**{¶20}** As mentioned previously, Philip also introduced the tax records from 2014. Based on the testimony of the parties and the tax records introduced at the hearing, the trial court interpreted the disputed provision as follows:

> **This Court believes that the intent of the parties, based upon testimony and all other evidence presented, was to divide the underpayment for the taxes for the year of 2014, which include both the federal and state. The 'rough amount of $8,000.00' matches up with the combined amount that was due and underpaid for the combination of both the federal and state obligation for that year.**

Doc. 47. Based on this interpretation, the trial court ordered Laura to pay an amount to Philip that would satisfy her obligation for one-half the amount of unpaid state and federal taxes from 2014.[1,2] Doc. 47. Having examined the materials in the record, we cannot conclude that the trial court abused its discretion in interpreting this provision in this manner.

**{¶21}** In conclusion, the provision addressing the tax debts from 2014 in the separation agreement was subject to multiple interpretations and, therefore,

---

[1] The tax records indicated that the federal government had withheld the amount owed in federal taxes from Laura and Philip's refund in 2015. Doc. 47. Tr. 53-54. Since Laura and Philip had jointly filed their taxes in 2015, the trial court determined that "the parties had jointly contributed to the federal tax underpayment for 2014 and satisfied that amount." Doc. 47. *See* Tr. 53-54. The trial court then determined that Laura had not contributed to the payment of the taxes that had been owed to the state in 2014 and ordered her to pay the equivalent of one-half of the amount that was owed to the state. Doc. 47.

[2] In this case, the trial court interpreted the separation agreement as giving each party responsibility for one-half of the total state and federal tax debts from 2014. Under Laura's interpretation, the separation agreement only makes her responsible for one-half of the federal tax debt and does not make her responsible for any of the state tax debt. However, if Laura's interpretation is correct, the separation agreement would also only require Philip to pay for one-half of the IRS tax debt and would also not make him responsible for the state tax debt. Thus, if her interpretation was correct, responsibility for the state tax debt would still have to be determined. But Laura has not raised an argument on appeal that suggests that it would be inequitable for each party to be held responsible for one-half of the state tax debt in the event such responsibility would need to be determined. Thus, even if Laura's interpretation was correct, she has not demonstrated how she was prejudiced by a decision that makes her responsible for one-half of the state tax debt.

ambiguous.  Further, we conclude that the trial court did not abuse its discretion in interpreting this ambiguous provision.  Accordingly, Laura has not demonstrated that the trial court erred in this matter.  Her first assignment of error is overruled.

### *Conclusion*

**{¶22}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Domestic Relations Division of the Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**