[Cite as *In re Contempt of Harden*, 2024-Ohio-831.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

|  |  |  |
|---|---|---|
| IN RE CONTEMPT OF CHERESSA HARDEN | : | |
| | : | |
| | | No. 112930 |
| | : | |
| [Appeal by Cheressa Harden in the matter styled: *In Re V.H.*] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** March 7, 2024

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Juvenile Division
Case No. AD-22-900356

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jake A. Elliott, Assistant Prosecuting Attorney, *for appellant.*

Kimberly Sims, *pro se.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Cheressa Harden ("Harden"), appeals the trial court's adoption of the magistrate's decision determining that Harden was in

indirect civil contempt of a court order. We vacate the trial court's decision and remand for further proceedings.

## I. Facts and Procedural History

{¶2} On May 11, 2023, a hearing was held before a magistrate to determine if there was a violation of a court order by Harden. The magistrate noted that the initial order to refer V.H. and his mother, K.S., for counseling services at the Cleveland Clinic ("the Clinic") was made on March 29, 2022. According to the magistrate, there was evidence that V.H. had been in treatment at the Clinic since the age of three, and the magistrate ordered V.H. and K.S. back to counseling, ordering Harden to make the referral.

{¶3} On September 20, 2022, the magistrate noted that V.H. had not been referred back to the Clinic. The issue was raised again on November 29, 2022, and according to the magistrate, V.H. and K.S. had still not been referred for counseling services. At the November 29 hearing, Harden testified that she made two phone calls to the Clinic but had not received a response back from them. The magistrate issued a show cause order and scheduled a contempt hearing for May 11, 2023, to determine whether the order to establish family-counseling had been violated.

{¶4} On May 11, 2023, at the motion for second extension of temporary custody hearing, under direct examination, Harden testified that she was assigned the case in July 2022. Harden stated that family therapy was on V.H.'s case plan to address the relationship between V.H. and K.S. because there were concerns

that K.S. was unaware of age-appropriate behaviors for and expectations of V.H. Specifically, there were concerns about the amount and degree of physical punishment in K.S.'s home involving V.H.

{¶5} Harden testified that initially K.S. was not referred for mental health services because she refused to sign a release of information form. However, she eventually did provide documentation from another agency, Signature Health, where she engaged in therapy. Harden then referred K.S. to Choices Behavioral and then the Clinic. When asked if K.S. engaged in family therapy, Harden replied that she did not engage with Choices Behavioral because there were issues getting in contact with K.S. in order for her to be assessed for family counseling.

{¶6} Harden did refer K.S. to the Clinic; however, after the initial assessment for V.H., the Clinic recommended that family counseling not take place.

Attorney:    And why was that recommendation made?

Harden:    There were some concerns about the child not wishing to be in the presence of his mother.

Attorney:    So was there a professional opinion that – family counseling not occur at that time?

Harden:    Yes.

Attorney:    Okay. Has there been any updates on that?

Harden:    The recommendation from Cleveland Clinic was that the provider that the child is currently engaged in would make the decision on when family counseling should be

recommended to start, and that provider, at this time, has not recommended that family counseling begin with mother and child.

Attorney: And do you know why?

Harden: When – Well, the reason that was given was that when mother's name is brought up or anything to that nature, the child avoids speaking about mother and always changes the subject.

Attorney: Okay. What's on the case plan for father?

Harden: The case plan goal for [Father] is to engage and develop a better relationship with his child, which was addressed by family counseling.

Attorney: And did – did the Agency refer father anywhere for family counseling?

Harden: So, yes. Family counseling is taking place with [V.H.'s] provider through Ohio Guidestone. Mental health provider through Ohio Guidestone.

Attorney: At Ohio Guidestone?

Harden: Yes.

Attorney: Okay. And is there – is there family therapy going on between father and the child?

Harden: At the time when we did make the recommendation for a second extension family counseling was occurring.

Attorney: Okay. And is there visitation going on?

Harden: Between father and child?

Attorney: Yes.

Harden: Yes.

Tr. 13 - 15.

{¶7} Harden further testified that V.H. and K.S. were not participating in visitation because V.H. did not want to meet with K.S.

{¶8} Immediately after the extension of temporary custody hearing, the magistrate conducted the alleged violation of the court ordered hearing. Shelle Towns ("Towns"), an extended supervisor with CCDCFS testified that she was Harden's supervisor. Towns testified that Harden shared with her that she was having difficulty getting a response back from the Clinic after reaching out to them to establish services for V.H. and K.S. Harden told Towns that she called Dr. Hilary Alexander ("Dr. Alexander") at the Clinic's intake department and left voicemails, but her calls had gone unreturned. Towns recommended to Harden that she put a concurrent plan in place regarding the referral. Harden explained to Towns that there was another provider, Choices, that they could refer V.H. and K.S. Towns explained to Harden that Harden needed to reach out to the attorney assigned to the case to let them know that CCDCFS would make a supplemental concurrent referral for family counseling.

{¶9} Towns further explained that this referral did not cancel the referral to the Clinic, but rather ensured that in case the Clinic does not respond, as they had not, CCDCFS would still be in compliance with the court order to refer V.H. and K.S. for services. Towns testified that if the Clinic responded, then the supplemental concurrent referral would cease.

{¶10} Next, Towns was questioned how she learned about Harden's "contempt issue." Tr. 10. Towns stated that Harden and the CCDCFS's attorney informed her. She stated, "My understanding is that the Courts were displeased with the Agency's efforts with gaining an assessment through Cleveland Clinic." Tr. 11. Towns then testified that she explained to Harden that she would try to reach out to the Clinic, since Harden had been unsuccessful. Towns stated that she attempted to get in touch with the Clinic more than once, specifically reaching out to Dr. Alexander. Towns made phone calls, left voicemails, and also sent an email attaching the journal entry and court order.

{¶11} It was after that communication that Dr. Alexander returned her call. An assessment was scheduled with V.H., and he attended the assessment. After V.H.'s assessment, Towns testified that family counseling was not recommended. Towns reached out to Dr. Alexander to clarify the decision. In an email to Towns, Dr. Alexander stated that family therapy was not recommended at that time. She further stated that family therapy would do more harm than good and that V.H.'s individual therapist could make a recommendation as to when family therapy should start between K.S. and V.H.

{¶12} After this testimony, the court asked for clarification as to the timeline of events, specifically when did Harden communicate with Towns that she was having difficulty contacting Dr. Alexander. Towns testified that the conversation

took place between September and November, prior to the November 29, 2022 hearing.

{¶13} After Towns's testimony, Harden was called to testify. She testified that after the September 20, 2022 hearing, she placed two calls to the Clinic's Adolescent Behavioral Health Department. She spoke to a scheduler, whose responsibility was to schedule the intake assessment appointment with Dr. Alexander. The scheduler was unable to open Dr. Alexander's schedule and sent Harden to Dr. Alexander's voicemail. Harden left a message. After Dr. Alexander did not return Harden's call, she repeated the same process. Again, she did not hear back from Dr. Alexander.

{¶14} Harden spoke to Towns about the fact that Dr. Alexander had not returned her calls, and Towns suggested contacting CCDCFS's supportive services department and the attorney to let them know of the difficulty. Harden did both in October. Harden also made a supplemental concurrent referral for family counseling through Choices. V.H. was initially assessed by Choices, but Choices was unable to make contact with K.S.

{¶15} After the November 29, 2022 hearing, Harden, again, called Dr. Alexander and left another voicemail and sent an email. It was not until Towns made additional phone calls to Dr. Alexander, sent her an email with the court order attached, and contacted CCDCFS's attorney that Dr. Alexander responded on December 7, 2022. Harden testified that Dr. Alexander referred them to

Brianna Eason ("Eason"), a psychologist. Both Towns and Harden attempted to contact Eason, but Eason never returned their call. As a result, Towns and Harden reached back out to Dr. Alexander, and she recommended "to just have [V.H.] come in through a sort of a–a clinic that could take the child for an assessment." Tr. 26.

{¶16} After V.H.'s assessment, Harden received the report that stated family counseling was not recommended at the time. It was recommended that the V.H.'s current therapist recommend family counseling when she felt V.H. was ready.

{¶17} After all parties testified, the court made its ruling stating:

It has been, since the inception of this case, an ongoing problem with getting the Agency to follow this Court's order. As far back, and mother is accurate in what she says, but as far back – it's been over a year that this Court has been trying to get the Agency to re-engage this child at the Cleveland Clinic. Initially, there were issues with counselors leaving and allowing a placement to change, where he would go for his treatments. And he was engaged in a whole program at the Cleveland Clinic, and it was verified that he had started there at the age of three. And when it gets to September 20th, it is in bold print, and I'm not sure how else the Court can do it, but, Worker shall immediately contact the Cleveland Clinic, refer the mother and child for family counseling at any other identified counseling services is recommended, because the testimony had revealed that mother and child had both engaged in services jointly and separately. On November 20th – The testimony today seemed to be a lot clearer, but on November 20th, it was the worker's testimony that she thought she made two calls. She hadn't noted it in – She didn't think it was in the activity log. She didn't know – I don't know, as we sit here today, if it's in the activity log, if it's noted, because I didn't hear any testimony about it. While I can appreciate contacting your supervisor, but if you contacted your legal counsel, when you say you're not sure how else it could have been resolved, when an order can't be – when the Court's order can't be followed, counsel for the Agency has

oftentimes filed a motion with this Court to modify that order based on the inability to comply with it. No such motion was filed. The parties just came to court and basically had gone again and referred this child to another provider. And one of the reasons this Court ordered – again ordered the child back to the Cleveland Clinic was on September 20th, the worker testified that the child's counselor did not do family therapy, but that mother could provide suggestions for providers for consideration as she, the social worker, had not found one. And also that mother and the child had been engaged in individual and family counseling through the Cleveland Clinic and the child was familiar with them and the mother and child were well known to them. That was the basis for the order. So while it's not a criminal contempt, it is, in fact, a civil contempt. It's an indirect civil contempt. Because the order is very specific and it's been ongoing. And Ms. Harden has been on the case long enough that that order should have been followed. I'm not sure, and I'm not going to speculate as to why counsel didn't file a motion. I'm sure what was said or anything. But the Court was never notified. This child should have been always maintained in the program he was in from the time he was three. He was known to those providers. He's had in at least two different providers since the inception of this case. And I have interviewed the child. And I will probably interview this child again. But continuity is important and he has been denied that. So I am going to find that Cheressa Harden is in indirect civil contempt of this Court's order. It's a $50 fine and ten days in jail. There is a purge. The purge is this. That Ms. Harden has to go for six months without violating any of these Court's orders. And I'm going to tell the–I'm still not clear as to why this child is not re-engaged in all the programs he was in at the Cleveland Clinic. I still haven't gotten that answer. Is it this counselor now is against family counseling where they were in family counseling? Ms. Towns, you're here. Ms. Konopka, you're here. Review this case from the beginning and you're going to see the problems that there were. And I expect you to address them. Because this child is not being served. His best interests are not being served with the way this case has been handled.

Tr. 52 – 56.

**{¶18}** Harden objected to the magistrate's decision on May 24, 2023. In her objections, she argued that the contempt was criminal, not civil, in nature; that she

did not violate the court's September 20, 2022 order; that establishing family counseling with the Clinic was impossible based on recommendations from the child's medical providers; and that the court set forth a legally deficient purge condition that purports to regulate future conduct contrary to Ohio law.

{¶19} On June 6, 2023, the trial court overruled Harden's objections and adopted the magistrate's decision without addressing Harden's arguments. Harden filed this appeal assigning one error for our review:

1. The trial court erred in adopting the magistrate's decision of May 11, 2023.

## II. Standard of Review

{¶20} "We review a finding of contempt under an abuse of discretion standard." *In re Contempt of Tracy Digney*, 2015-Ohio-4278, 45 N.E.3d 650, ¶ 7, (8th Dist.), citing *In re Contempt of Modic*, 8th Dist. Cuyahoga Nos. 96598, 2011-Ohio-5396, ¶ 7, citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). "Likewise, we review a trial court's decision to adopt a magistrate's decision for abuse of discretion." *Id.*, citing *In re A.L.*, 8th Dist. Cuyahoga No. 99040, 2013-Ohio-5120, ¶ 10, citing *Dancy v. Dancy*, 8th Dist. Cuyahoga No. 82580, 2004-Ohio-470, ¶ 10.

## III. Law and Analysis

### A. Criminal Contempt

{¶21} Harden argues that the trial court erred in adopting the magistrate's decision because the magistrate found her in contempt for disobeying a court order. Harden contends that a contempt that punishes disobedience is a criminal contempt, rather than a civil contempt, as the magistrate stated. "The Ohio Supreme Court has recognized that a contempt sanction can be both civil and criminal." *Id*. at ¶ 8, citing *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 15. "A defendant must be proven guilty beyond a reasonable doubt to be punished for criminal contempt." *id*., citing *Brown v. Executive* 200, Inc., 64 Ohio St.2d 250, 416 N.E.2d 610 (1980), "while civil contempt must be established by clear and convincing evidence." *Id*., citing *Sagan v. Tobin*, 8th Dist. Cuyahoga No. 86792, 2006-Ohio-2602, ¶ 34. "Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true." *Id*.

{¶22} "Criminal and civil contempt are distinguished by the character and purpose of the punishment imposed by the court." *Id*. at ¶ 9, citing *Brown* at 253. "Civil contempt is enforced with remedial or coercive sanctions and characterized by conditional sentences while criminal contempt imposes punishment for an act of disobedience and vindicates the authority of the law and the court." *Id*. at *id*. "Criminal contempt is characterized by unconditional sentences." *Id*. at 254. "'Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to

coerce the appellees to obey * * *, or was it to punish them for past violations?'" *Id.* at *id.*

{¶23} The magistrate stated, "[S]o I am going to find that Cheressa Harden is in indirect civil contempt of this Court's order. It's a $50 fine and ten days in jail. There is a purge. The purge is this. That Ms. Harden has to go for six months without violating any of these Court's orders." Tr. 56. The court erred in stating that it found Harden in indirect civil contempt. According to the magistrate's order, Harden was punished for criminal contempt because it was a punishment for an act of past disobedience, violating a court order. As such, the magistrate would have had to find Harden guilty beyond a reasonable doubt of intentionally disregarding the magistrate's order.

{¶24} The record reveals that Harden made reasonable attempts to contact the Clinic to establish services for K.S. and V.H. Harden called and left messages for Dr. Alexander, and Dr. Alexander did not return the calls. For guidance, Harden notified her supervisor, Towns, about Dr. Alexander's failure to return her calls, and under the advisement of Towns, Harden emailed Dr. Alexander and spoke with CCDCFS's attorney. Additionally, Harden initiated supplemental services through Choices for V.H. and K.S. Those services could not move forward because K.S. did not respond to their communications.

**{¶25}** We also recognize that "[t]his is not an instance of a willful violation or intentional disregard of a court order." *In re Contempt of Tracy Digney*, ¶ 12. The magistrate stated:

> While I can appreciate contacting your supervisor, but if you contacted your legal counsel, when you say you're not sure how else it could have been resolved, when an order can't be – when the Court's order can't be followed, counsel for the Agency has oftentimes filed a motion with this Court to modify that order based on the inability to comply with it. No such motion was filed.

Tr. 54. The magistrate's erroneous shifting of CCDCFS's attorney's responsibility to file a motion onto an individual social worker amounts to an abuse of discretion.

**{¶26}** The record does not reflect that the magistrate or the trial court made a finding of guilt beyond a reasonable doubt as it pertains to Harden's actions. Therefore, the trial court erred in adopting the magistrate's decision to find Harden in civil contempt.

## B.    Civil Contempt

**{¶27}** Harden argues that the evidence presented at the hearing conclusively established that she had not violated the magistrate's order to establish family counseling at the Clinic. As previously stated, Harden made reasonable efforts at establishing family counseling for V.H. and K.S. She made several calls to the Clinic and sent emails. Eventually, Dr. Alexander returned her call and set up an intake appointment. Upon the advisement of the Clinic, family counseling was not recommended.

{¶28} However, the magistrate still found Harden in contempt and imposed sanctions. The magistrate stated: "It's a $50 fine and ten days in jail. There is a purge. The purge is this. That Ms. Harden has to go for six months without violating any of these Court's orders." Tr. 56. "'Judicial sanctions for civil contempt may be employed to coerce a defendant into compliance with the lawful orders of the court.'" *In re G.J.A.*, 8th Dist. Cuyahoga No. 106132, 2018-Ohio-2838, ¶ 35, quoting *Pugh v.* Pugh, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984). "'A sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt.'" *Id.*, quoting *In re Purola*, 73 Ohio App.3d 306, 312, 596 N.E.2d 1140 (3d Dist.1991). "'The trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible.'" *Id.* at *id.* at 313.

{¶29} The magistrate's sanction fails to coerce Harden into compliance with the magistrate's order because Harden had already established family counseling for V.H. and K.S. The Clinic recommended that counseling not continue until V.H.'s individual counselor felt as if he was ready to have counseling with K.S. Harden's responsibility was to make the referral. She cannot coerce or force the Clinic to provide counseling services for V.H. Also, as previously stated, the magistrate's sanction punished Harden for disobeying a previous court order, thereby making it a criminal sanction, and not a civil one.

{¶30} Therefore, the trial court erred in adopting the magistrate's decision to enforce the sanction.

## C.  Impossibility

{¶31} Harden contends that establishing family counseling at the Clinic was impossible, which is an affirmative defense to contempt.

> For purposes of contempt, "[a] party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why [he or] she is unable to comply with the court's order."

*In re I.L.J.*, 8th Dist. Cuyahoga No. 109564, 2020-Ohio-5434, ¶ 10, quoting *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15, citing *Lahoud v. Tri-Monex, Inc.*, 8th Dist. Cuyahoga No. 96118, 2011-Ohio-4120, ¶ 54.

{¶32} The record reflects that once Harden made contact with Dr. Alexander, V.H. was scheduled for an initial assessment. From that assessment, family counseling was not recommended.  Therefore, establishing family counseling at the Clinic was impossible. "A trial court abuses its discretion by ordering purge conditions that are unreasonable or where compliance is impossible." *Allan v. Allan*, 8th Dist. Cuyahoga No. 101700, 2015-Ohio-2037, ¶ 13, citing *Rose v. Rose*, 8th Dist. Cuyahoga No. 99933, 2013-Ohio-5136, ¶ 7.

{¶33} Therefore, the trial court erred in adopting the magistrate's decision for contempt when it was demonstrated that compliance with its order was impossible.

## D.  Purge Condition

{¶34} Harden argues that the magistrate's purge condition predicated on future conduct is defective as a matter of law. "[B]ecause contempt proceedings are based on the contemnor's violation of a previous court order, a purge condition that punishes future conduct is invalid." *Chiro v. Foley*, 8th Dist. Cuyahoga No. 100962, 2014-Ohio-3728, ¶ 24, citing *Burke v. Burke*, 7th Dist. Mahoning No. 13 MA 24, 2014-Ohio-1402, ¶ 8. "Furthermore, 'for a purge condition to be valid, it must provide a clear opportunity to purge the contempt rather than regulate future conduct.'" *Id.*, citing *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, 967 N.E.2d 246, ¶ 37 (3d Dist.).

{¶35} The magistrate stated: "The purge is this. That Ms. Harden has to go for six months without violating any of these Court's orders." Tr. 54. This purge clearly regulates Harden's future behavior and is invalid. Therefore, the trial court erred in adopting the magistrate's decision ordering a purge condition on future conduct.

{¶36} Judgment vacated and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P. J., and
MICHAEL JOHN RYAN, J., CONCUR